UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ———————————————— x | | |
| In re MORGAN STANLEY MORTGAGE PASS-THROUGH CERTIFICATES LITIGATION | : : : | Civil Action No. 1:09-cv-02137-LTS |
| ———————————————— | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : : | |
| ALL ACTIONS. | : | |
| ———————————————— x | | |

LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................3

III.  ARGUMENT ..........................................................................................................5

    A.    Legal Standard ............................................................................................5

    B.    Lead Plaintiff Has Standing to Assert the Claims Set Forth in the
        Complaint.....................................................................................................6

    C.    The Complaint Adequately Alleges Violations of §§11 and 12(a)(2) of the
        Securities Act .............................................................................................10

        1.    The Complaint Alleges Actionable False and Misleading
            Statements .....................................................................................11

            a.    The Offering Documents Misrepresented the Underwriting
                Practices Used............................................................................12

            b.    The Offering Documents Misrepresented the Appraisal
                Practices Employed by Originators .................................................15

            c.    The LTV Ratios Included in the Offering Documents Were
                False and Misleading ...................................................................16

            d.    The Credit Ratings Included in the Offering Documents
                 Were False and Misleading...........................................................16

        2.    The Complaint Alleges Lead Plaintiff and the Members of the
            Class Have Been Damaged .......................................................19

        3.    The Complaint Alleges Compliance with the Statute of Limitations ........21

    D.    The Complaint Adequately Alleges Violations of §15 of the Securities Act ........25

IV.   CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adair v. Kaye Kotts Assocs.*,
No. 97 Civ. 3375 (SS), 1998 U.S. Dist. LEXIS 3900
(S.D.N.Y. Mar. 27, 1998) ............................................................................................19, 21

*Ashcroft v. Iqbal*,
__ U.S. __, 129 S. Ct. 1937 (2009)...............................................................................6, 16

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004)...............................................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................5

*Castro v. City of New York*,
No. 05 Civ. 593 (LAK) (MHD), 2009 U.S. Dist. LEXIS 63836
(S.D.N.Y. July 22, 2009) ...................................................................................................25

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)............................................................................................7, 8

*Degulis v. LXR Biotechnology*,
No. 95 Civ 4204 (RWS), 1997 U.S. Dist. LEXIS 381
(S.D.N.Y. Jan. 21, 1997)...........................................................................................10, 18

*Foman v. Davis*,
371 U.S. 178 (1962)...........................................................................................................25

*Grasty v. Amalgamated Clothing & Textile Workers Union, etc.*,
828 F.2d 123 (3d Cir. 1987)................................................................................................7

*Grossman v. Waste Mgmt., Inc.*,
No. 83 C 2167, 1983 WL 1370 (N.D. Ill. Sept. 9, 1983)............................................19, 21

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995).............................................................................................................6

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983).............................................................................................10, 19, 20

*Hoffman v. UBS-AG*,
591 F. Supp. 2d 522 (S.D.N.Y. 2008)................................................................................9

**Page**

*Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*,
    159 F.3d 723 (2d Cir. 1998)...................................................13

*In re AIG Advisor Group Sec. Litig.*,
    No. 06 CV 1625 (JG), 2007 U.S. Dist. LEXIS 30179
    (E.D.N.Y. Apr. 25, 2007)...................................................9

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
    No. 04 Civ. 4885 (SWK), 2005 U.S. Dist. LEXIS 24263
    (S.D.N.Y. Oct. 19, 2005)...................................................9

*In re Authentidate Holding Corp. Sec. Litig.*,
    No. 05 Civ. 5323 (LTS)(DFE), 2006 U.S. Dist. LEXIS 47971
    (S.D.N.Y. July 14, 2006)...................................................9

*In re Constar Int'l Sec. Litig.*,
    585 F.3d 774, 2009 U.S. App. LEXIS 23844
    (3rd Cir. 2009) ...................................................19, 21

*In re Citigroup Auction Rate Sec. Litig.*,
    No. 08 Civ. 3095 (LTS) (FM), 2009 U.S. Dist. LEXIS 83046
    (S.D.N.Y. Sept. 11, 2009)...................................................9

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................*passim*

*In re Credit Suisse First Boston Corp. Sec. Litig.*,
    No. 97 Civ. 4760 (JGK), 1998 U.S. Dist. LEXIS 16560
    (S.D.N.Y. Oct. 20, 1998) ...................................................7, 8

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469
    (S.D.N.Y. Sept. 20, 2000) ...................................................8

*In re Dynex Capital, Inc.*,
    No. 05 Civ. 1897 (HB), 2009 U.S. Dist LEXIS 96527
    (S.D.N.Y. Oct. 19, 2009) ...................................................11, 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)...................................................19

*In re Fleming Cos. Sec. & Derivative Litig.*,
    No. 5-03-MD-1530 (TJW), 2004 U.S. Dist. LEXIS 26488
    (E.D. Tex. Jun. 10, 2004)...................................................8, 9

**Page**

*In re Friedman's, Inc. Sec. Litig.*,
   385 F. Supp. 2d 1345 (N.D. Ga. 2005) ...............................................................6

*In re Fuwei Films Sec. Litig.*,
   634 F. Supp. 2d 419 (S.D.N.Y. 2009) ...............................................................10

*In re IBM Corporate Sec. Litig.*,
   163 F.3d 102 (2d Cir. 1998) ...............................................................................19

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003) ..........................................................21, 24

*In re Lilco Sec. Litig.*,
   625 F. Supp. 1500 (E.D.N.Y. 1986) ...................................................................18

*In re Marsh & McLennan Cos. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...................................................................6

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
   434 F. Supp. 2d 233 (S.D.N.Y. 2006) ...................................................................9

*In re MobileMedia Sec. Litig.*,
   28 F. Supp. 2d 901 (D.N.J. 1998) .....................................................................8, 9

*In re NovaGold Res. Inc. Sec. Litig.*,
   629 F. Supp. 2d 272 (S.D.N.Y. 2009) ...................................................................6

*In re Polaroid Corp. Sec. Litig.*,
   465 F. Supp. 2d 232 (S.D.N.Y. 2006) .................................................................23

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
   441 F. Supp. 2d 579 (S.D.N.Y. 2006) ...................................................................9

*In re Sumitomo Copper Litig.*,
   120 F. Supp. 2d 328 (S.D.N.Y. 2000) .................................................................23

*In re Twinlab Corp. Sec. Litig.*,
   103 F. Supp. 2d 193 (E.D.N.Y. 2000) ................................................................10

*In re Wash. Mut.*,
   259 F.R.D. 490 (W.D. Wash. 2009) ...................................................................15

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996) ...................................................................................8

**Page**

*In re WorldCom, Inc. Sec. Litig.*,
  No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 4240
  (S.D.N.Y. Mar. 19, 2004) ....................................................................8, 9

*In re WorldSpace Sec. Litig.*,
  No. 07 Civ. 2252 (RMB), 2008 U.S. Dist. LEXIS 56224
  (S.D.N.Y. July 21, 2008) ....................................................................25

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)................................................................23

*McMahan & Co. v. Wherehouse Entm't*,
  65 F.3d 1044 (2d Cir. 1995)...........................................................20, 21

*Newman v. Warnaco Group, Inc.*,
  335 F.3d 187 (2d Cir. 2003)................................................................23

*Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*,
  840 F. Supp. 243 (S.D.N.Y. 1993) ......................................................23

*P. Stolz Family P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004)..................................................................13

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  No. 08-10446-RGS, 2009 U.S. Dist. LEXIS 91789
  (D. Mass. Sept. 30, 2009) .....................................................................9

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)................................................................10

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
  547 F.3d 406 (2d Cir. 2008)................................................................24

*Strassberg v. N.Y. Hotel & Motel Trades Council, Local 6*,
  31 Fed. Appx. 15 (2d Cir. 2002) .........................................................25

*Tolin v. Ambac Fin. Group, Inc.*,
  No. 08 Civ. 11241(CM), 2009 U.S. Dist. LEXIS 119986
  (S.D.N.Y. Dec. 23, 2009)............................................................3, 4, 5

*Washington v. Goord*,
  No. 07 Civ. 7150 (LTS)(FM), 2009 U.S. Dist. LEXIS 106066
  (S.D.N.Y. Nov. 13, 2009) .....................................................................5

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k ......................................................................................... *passim*
    §77k(a) ................................................................................................6, 18
    §77k(e) .......................................................................................................20
    §77l ......................................................................................1, 3, 18, 20
    §77l(a)(2) ............................................................................... *passim*
    §77m .....................................................................................................22, 24
    §77o..............................................................................................1, 3,25
    §78m ..........................................................................................................21

28 U.S.C.
    §1452..........................................................................................................1

**RULES**

Federal Rules of Civil Procedure
    Rule 8 .........................................................................................................6
    Rule 8(a) ................................................................................................6, 23
    Rule 12(b)(6)............................................................................................1
    Rule 15(a)(2)..........................................................................................25

**REGULATIONS**

17 C.F.R.
    §230.436(g) ...........................................................................................17
    §230.436(g)(1) ......................................................................................17

*Disclosure of Security Ratings in Registration Statements,*
    SEC Release Nos. 33-6336, 34-18012,
    46 Fed. Reg. 42024 (Aug. 18, 1981)........................................17, 18

*Nationally Recognized Statistical Rating Organizations,*
    SEC Release Nos. 33-7085; 34-34616,
    59 Fed. Reg. 46314 (Sept. 7, 1994) ...............................................17

**SECONDARY AUTHORITIES**

7AA Charles A. Wright, Arthur R. Miller & Mary K. Kane,
    *Federal Practice & Procedure* (3d ed. 2005)
    §1785.1......................................................................................................7

Lead Plaintiff respectfully submits this memorandum of law in opposition to defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Lead Plaintiff's Consolidated Amended Securities Class Action Complaint (the "Complaint") (Docket No. 38).[1]

## I.    INTRODUCTION

This action brings strict liability and negligence-based claims under §§11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") against some of the key figures in the mortgage securitization melt-down.  At the heart of the Complaint is a Registration Statement through which defendants sold hundreds of millions of dollars worth of mortgage-backed securities (the "Certificates") to Lead Plaintiff and members of the Class (collectively, "plaintiffs").  As alleged in the Complaint, however, the Registration Statement and subsequent Prospectuses and Prospectus Supplements (collectively, the "Offering Documents") were rife with materially false and misleading statements about the nature and overall quality of the Certificates.  As the truth about these misstatements began to be revealed, the value of the Certificates dropped dramatically, and plaintiffs suffered significant losses as a result.  Just about every Certificate is now rated as "junk," after being originally offered as "investment grade."

Defendants now seek to avoid liability for their material misstatements by clouding and overcomplicating the issues.  But the law governing this action is not complicated: because the Offering Documents – including the Registration Statement, itself – contained material misstatements regarding the Certificates, defendants are liable under the strict liability and

---

[1]     This case was originally filed in California Superior Court on December 2, 2008. *See* Docket No. 1, Exhibit A to Notice of Removal of Action Under 28 U.S.C. §1452 ("Docket No. 1").  On December 31, 2008, defendants, under 28 U.S.C. §1452, filed their notice of removal in the United States District Court for the Central District of California.  On March 6, 2009, the case was transferred from the Central District of California to the Southern District of New York.  Three days later, on March 9, 2009, the instant action was assigned to this Court.

negligence provisions of the Securities Act.  Further, Lead Plaintiff has standing under the Securities Act to assert each of the claims alleged in the Complaint on behalf of the entire class of Certificate purchasers who, like Lead Plaintiff, necessarily acquired their Certificates pursuant to the only Registration Statement at issue.

The Complaint alleges that although defendants represented that loan originators were following specific lending guidelines, this was not the case.  Instead, lenders had completely abandoned their guidelines and were making loans without regard to repayment ability, simply so they could sell them to defendants at a profit, who then re-packaged the loans as securities and sold them to the investors here.  ¶¶5, 55-65, 78-122.[2]  The Complaint also alleges that while defendants said that appraisals would be performed in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP") and based on the true value of the properties, they were not.  Rather than following USPAP, appraisers were instead systematically providing inflated appraisals.  ¶¶5, 66-122.  The improperly inflated appraisals, in turn, made the majority of the "loan to value" ("LTV") ratios reported in the Offering Documents false.  ¶123.  The Complaint also alleges that because of this faulty data, and for other reasons, the credit ratings assigned to the Certificates were false.  ¶¶124-152.  As a result, the Certificates were far less secure than represented.  ¶5.

Defendants' contention that they disclosed all of the above information – and thus are not liable for their misrepresentations and omissions – is laughable.  Despite pointing to numerous purported "disclosures" in their motion to dismiss, *nowhere* do defendants point to disclosures that reveal the *actual* information the Complaint alleges to have been omitted – namely, that loans were made solely for the sake of making them, without regard to borrowers' ability to repay; that

---

[2]       Unless otherwise noted, references to "¶__" or "¶¶__" are to the Complaint.

appraisals were systematically inflated; that the LTV ratios set forth in the Offering Documents were false; and that the ratings assigned to the Certificates were also false because they were based on inaccurate information and inherently unreliable models.  Because *this* information was *never* disclosed to investors, defendants are liable under §§11, 12(a)(2) and 15 of the Securities Act.

## II.    STATEMENT OF FACTS

On December 23, 2005 (with amendments on February 17, 2006 and March 14, 2006), defendant Morgan Stanley Capital Inc. ("MSC" or the "Issuer") caused a Registration Statement to be filed with the SEC in connection with, and for the purpose of, issuing hundreds of millions of dollars worth of Certificates.  ¶3.[3]  The Certificates were issued to investors, via the Trusts, pursuant to Prospectus Supplements, the contents of which were each explicitly incorporated into the lone Registration Statement.  ¶¶3, 13 (listing all 31 Trusts), 54.  The Certificates were supported by pools of mortgage loans, which had been securitized by MSC.  ¶3.[4]

---

[3]    As set forth in the Complaint, the defendant parties involved in the offering of the Certificates were all Morgan Stanley entities.  Defendant Morgan Stanley is the parent company who effectively created and controlled every entity involved in the transaction.  ¶10.  Defendant Morgan Stanley Mortgage Capital Inc. (which was merged into defendant Morgan Stanley Capital Holdings LLC in 2007) was an indirect wholly-owned subsidiary of Morgan Stanley, and the parent of MSC, as well as an affiliate of defendant Morgan Stanley & Co. Incorporated ("MS&Co").  ¶11.  As the Sponsor and Seller for the Certificates, Morgan Stanley Mortgage Capital Inc. (collectively with Morgan Stanley Capital Holdings LLC, "MSMC"), originated or otherwise acquired residential mortgage loans to be securitized by the Depositor, MSC, and worked with MS&Co, the Rating Agencies, loan sellers and servicers in negotiating the principal securitization transaction documents and structuring the securitization transactions.  *Id.*  As mentioned above, defendant MSC  served as the Depositor and Issuer of the Certificates by virtue of its control over the 31 New York common law trusts (the "Trusts") that ultimately issued the Certificates.  ¶¶12-13.  Defendant MS&Co was the sole lead manager, the sole bookrunner and a key underwriter for the Certificates.  ¶14.

[4]    *See Tolin v. Ambac Fin. Group, Inc.*, No. 08 Civ. 11241(CM), 2009 U.S. Dist. LEXIS 119986, at *9-*11 (S.D.N.Y. Dec. 23, 2009) (describing securitization procedures).

In the Offering Documents, defendants chose to make affirmative representations regarding the underlying mortgage loan pools.  Specifically, the Offering Documents represented that despite the somewhat enhanced risk profiles associated with these loans, each underlying loan would be originated pursuant to certain underwriting standards that were generally intended "to evaluate the prospective borrower's credit standing and ability to repay the loan."  *See*, *e.g.*, ¶¶55-56, 79, 88-92, 94-96, 98, 107, 109, 113-15, 117, 121.  The Offering Documents also affirmatively represented that the underlying loans would be made based on the true value of the underlying properties, which were to be confirmed by appraisals performed in accordance with the USPAP requirements.  *See, e.g.*, ¶¶55-56, 66, 91, 96, 107, 114, 121.  Additionally, the Offering Documents represented that the underlying loans had specific LTV ratios, and that the Certificates had been assigned certain credit ratings by national rating agencies Standard & Poor's Rating Services ("S&P"), Moody's Investors Services, Inc. ("Moody's") or Fitch Rating (collectively, the "Rating Agencies").  ¶¶123-124.

Contrary to defendants' representations, the originators of the mortgages transferred to the Trusts were not issuing loans in accordance with the Offering Document's stated guidelines, but were instead simply originating as many loans as possible.  ¶¶56-65, 78-122.  As part of this approach, required loan documents were either not submitted or were improperly altered on a routine basis, in direct contrivance to the Offering Document's stated underwriting guidelines.  *Id*. Moreover, the appraisals of the underlying properties were neither performed in accordance with USPAP, nor designed to evaluate the true value of properties being used as collateral.  Instead, appraisers were pressured to produce falsely inflated appraisals.  ¶¶66-122.  As a result, the LTV ratios disclosed in the Offering Documents – which were based on the inflated appraisals – were also false.  ¶123.  And furthermore, the credit ratings assigned to the Certificates were also rendered false

- 4 -

by the fact that they were based on outdated and inherently unreliable rating models and criteria, as well as inaccurate loan information provided by defendants.  ¶¶125-152.

Lead Plaintiff acquired Certificates pursuant and traceable to the Registration Statement and the Prospectus Supplement for the Morgan Stanley Mortgage Loan Trust 2007-11AR ("2007-11AR Trust").  ¶9.  Specifically, Lead Plaintiff purchased 5,430,000 2007-11AR Trust Mortgage Pass-Through Certificates, each with a face value of $101.00, on June 20, 2007, and 935,938 2007-11AR Trust Mortgage Pass-Through Certificates, each with a face value of $96.08, on December 11, 2007. *Id.*  Defendant MS&Co served as the broker and seller in both of Lead Plaintiff's transactions.  *Id.*

The Certificates were overvalued at the time they were purchased due to the materially misrepresented facts and omissions contained in the Offering Documents.  ¶5.  By mid-2008, the truth about the Certificates began to be revealed to the public due to the poor performance of the underlying loans, which caused the value of the Certificates to fall precipitously.  *Id.*  Because of this drop in value, this action is properly brought.

## III.    ARGUMENT

### A.    Legal Standard

When considering a motion to dismiss, "the Court accepts as true the non-conclusory factual allegations in the complaint, and draws all reasonable inferences in Plaintiff's favor."  *Washington v. Goord*, No. 07 Civ. 7150 (LTS)(FM), 2009 U.S. Dist. LEXIS 106066, at *11-*12 (S.D.N.Y. Nov. 13, 2009) (Swain, J.).  "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at *12 (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009)("The

plausibility standard is ***not*** akin to a 'probability requirement.'").[5]

Because plaintiff's claims are based on theories of ***strict liability and negligence*** under §§11

and 12(a)(2) of the Securities Act, and allege no fraudulent conduct on behalf of defendants, they are

governed by the notice pleading standard set forth in Fed. R. Civ. P. 8(a), which requires only "'a

"short and plain statement of the claim showing that the pleader is entitled to relief."'"   *In re*

*NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 283 (S.D.N.Y. 2009) (citing *Iqbal*, 129 S. Ct. at

1949).  As the Supreme Court recently reaffirmed, "the pleading standard Rule 8 announces does not

require 'detailed factual allegations.'"  *Iqbal*, 129 S. Ct. at 1949.

### B.   Lead Plaintiff Has Standing to Assert the Claims Set Forth in the Complaint

Courts in the Second Circuit and elsewhere have consistently held that the "pleading

requirement for Section 11 standing is satisfied by 'general allegations that plaintiff purchased

"pursuant to" ***or traceable to*** [a] false registration statement.'"  *In re Marsh & McLennan Cos. Sec.*

*Litig.*, 501 F. Supp. 2d 452, 491 (S.D.N.Y. 2006).[6]  Similarly, in order to have standing to assert

claims under §12(a)(2), a plaintiff need only generally allege that it purchased securities in a public

offering directly pursuant to a false and misleading prospectus.  15 U.S.C. §77l(a)(2); *see also*

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 577-78 (1995); *In re Friedman's, Inc. Sec. Litig.*, 385 F.

Supp. 2d 1345, 1368 (N.D. Ga. 2005).  Plaintiff has satisfied the standing requirements for both

§§11 and 12(a)(2), by setting forth the details regarding its purchases of Certificates, which were

---

[5]      Unless otherwise noted, all emphasis is added and citations are omitted.

[6]      S*ee also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1165 (C.D. Cal.
2008) ("[Section 11] grants standing to anyone who buys '***such security***' – ***one traceable to a***
***defective registration statement***.").

issued pursuant to the sole Registration Statement and purchased directly pursuant to the Prospectus Supplement for the 2007-11AR Trust.  ¶9.

Because plaintiff undeniably has standing ***vis-à-vis each named defendant*** to assert the claims set forth in the Complaint ***on its own behalf***, the standing requirement is satisfied, and nothing more is required at this stage.  Any remaining questions regarding the proper scope of plaintiff's claims are not questions of standing, but rather, challenges to plaintiff's adequacy and typicality as a class representative, which will be addressed at the class certification stage.  *See In re Credit Suisse First Boston Corp. Sec. Litig.*, No. 97 Civ. 4760 (JGK), 1998 U.S. Dist. LEXIS 16560, at *31 (S.D.N.Y. Oct. 20, 1998) (holding that, where plaintiffs "have standing to sue the defendants in connection with [their own purchases] [w]hether [they] can also adequately represent the claims of those class members who purchased [other securities] is a question that goes to the typicality and adequacy of the plaintiffs as class representatives").[7]

Defendants do not and cannot contest Lead Plaintiff's standing ***in its own right*** to assert claims ***vis-à-vis each named defendant*** pursuant to §§11 and 12(a)(2) ***based on its own purchases*** of Certificates.  *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Amended Complaint ("Defs' Brief") at 7-9.  Instead, they ask the Court to rule on class certification now.  *See Grasty v. Amalgamated Clothing & Textile Workers Union, etc.*, 828 F.2d

---

[7]     *See also* 7AA Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* §1785.1, at 388-89 (3d ed. 2005) ("***Representative parties who have a direct and substantial interest have standing***; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) ("'for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and . . . the inquiry shift[s] to a class action analysis'").

123, 130 n.8 (3d Cir. 1987) ("[defendants] confuse standing and the typicality requirement of Rule 23(a)(3)").  Defendants' argument is improper because, as explained above, Lead Plaintiff has demonstrated standing in its own right, and nothing more is required at this stage of the litigation. *See Credit Suisse*, 1998 U.S. Dist. LEXIS 16560, at *31; *Cent. States*, 504 F.3d at 241.[8]

Moreover, even when addressed as a standing issue, courts have held that where multiple securities are issued pursuant to a common registration statement, standing to assert §11 claims based on all such securities lies with any plaintiff who acquires any of the securities pursuant and/or traceable to the common registration statement.  *See In re WorldCom*, *Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 4240, at *6-*7 (S.D.N.Y. Mar. 19, 2004) (finding purchasers of one type of debt security had standing to pursue claims on behalf of purchasers of a second type of debt security issued pursuant to the same registration statement).[9]  Indeed, as recognized by the *Countrywide* court, "[a] contrary rule would mean that someone who purchases

---

[8]    *See also In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *8 (S.D.N.Y. Sept. 20, 2000) (addressing similar argument and finding "[c]ourts have not addressed this concern vis a vis the doctrine of standing, but rather have examined such concerns pursuant to Rule 23(a)(3)'s typicality requirement"); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 718 n.22 (3d Cir. 1996) ("While these concerns might be relevant on a motion for class certification, they do not address whether, as a threshold matter, plaintiffs properly stated a [§12(a)(2)] claim under Rule 12(b)(6)."); *Countrywide*, 588 F. Supp. 2d at 1167 ("The well developed class certification framework will better guide this inquiry and lead to more efficient resolution of class claims than standing's sometimes-arbitrary distinctions.").

[9]    *Accord Countrywide*, 588 F. Supp. 2d at 1165 (finding §11 standing for all offerings pursuant to an "initial shelf registration statement contain[ing] an actionable statement or omission that is common to more than one issuance"); *In re Fleming Cos. Sec. & Derivative Litig.*, No. 5-03-MD-1530 (TJW), 2004 U.S. Dist. LEXIS 26488, at *153 (E.D. Tex. Jun. 10, 2004) ("case law holds that purchasers of one type of security have **standing** to sue on behalf of purchasers of other types of security issued pursuant to a single registration statement") (emphasis in original); *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 (D.N.J. 1998) (finding §11 standing for stock purchasers to represent note purchasers where the different types of securities were both issued pursuant to the same registration statement).

before an amendment could not have standing to represent someone who happened to purchase after the most *de minimis* amendment, even if the only violation is common to both the original registration statement and the amended statement." 588 F. Supp. 2d at 1166.[10]

_____

[10]    Defendants' cases are inapposite and fail to support the outcome defendants' urge. *See* Defs' Brief at 7-8. As an initial matter, the majority of defendants' cases involve mutual funds. *See In re AIG Advisor Group Sec. Litig.*, No. 06 CV 1625 (JG), 2007 U.S. Dist. LEXIS 30179 (E.D.N.Y. Apr. 25, 2007); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522 (S.D.N.Y. 2008); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579 (S.D.N.Y. 2006); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233 (S.D.N.Y. 2006); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885 (SWK), 2005 U.S. Dist. LEXIS 24263 (S.D.N.Y. Oct. 19, 2005). Unlike the Certificates here, the separate mutual funds in those cases were ***not*** issued pursuant to common registration statements, which led those courts to find plaintiffs could not "meet the injury requirement for claims relating to funds in which they [did] not purchase[] shares." *See Hoffman*, 591 F. Supp. 2d at 530-31. By contrast, each of the Certificates here were registered via a ***common*** Registration Statement and offered as part of a ***common*** scheme. ¶¶3, 13, 54. As a result, plaintiff and all Certificate purchasers trace their injuries to not only the same conduct, but the same Registration Statement, which forms the basis for defendants' liability under §11. *See WorldCom*, 2004 U.S. Dist. LEXIS 4240, at *6-*7.

Defendants' reliance on *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No. 08-10446-RGS, 2009 U.S. Dist. LEXIS 91789 (D. Mass. Sept. 30, 2009), a non-controlling out of circuit district court opinion, is similarly misplaced. The *Nomura* opinion was the product of a perfunctory analysis, which followed the same line of inapposite mutual fund cases cited above, instead of following the line of cases described *supra*, which have held that where multiple securities are issued pursuant to a common registration statement, standing to assert §11 claims based on all such securities lies with any plaintiff who acquired securities pursuant and/or traceable to the registration statement. *See, e.g.*, *WorldCom*, 2004 U.S. Dist. LEXIS 4240, at *6-*7; *Fleming*, 2004 U.S. Dist. LEXIS 26488, at *153; *MobileMedia*, 28 F. Supp. 2d at 911.

Lastly, as this Court is undoubtedly aware, defendants' reliance on *In re Authentidate Holding Corp. Sec. Litig.*, No. 05 Civ. 5323 (LTS)(DFE), 2006 U.S. Dist. LEXIS 47971, at *20- *22 (S.D.N.Y. July 14, 2006), and *In re Citigroup Auction Rate Sec. Litig.*, No. 08 Civ. 3095 (LTS) (FM), 2009 U.S. Dist. LEXIS 83046, at *31 (S.D.N.Y. Sept. 11, 2009), is wholly misplaced. Defs' Brief at 7-8. In those cases, the named plaintiff lacked standing to assert claims ***in its own right***. Here, as explained above, that is not the case.

C.    **The Complaint Adequately Alleges Violations of §§11 and 12(a)(2) of the Securities Act**

Section 11 of the Securities Act "'places a relatively minimal burden on a plaintiff,' requiring simply that the plaintiff allege that he purchased the security and that the registration statement contains false or misleading statements concerning a material fact." *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 201 (E.D.N.Y. 2000) (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983)). The same is true for claims brought under §12(a)(2), in that a plaintiff must only plead that the prospectus at issue "'contained an untrue statement of material fact or omitted to state a material fact that was required to be stated therein or was necessary to make the statements therein not misleading.'" *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 434 (S.D.N.Y. 2009).

As the Supreme Court has recognized, §11 "impos[es] a ***stringent standard of liability*** on the parties who play a direct role in a registered offering." *Huddleston*, 459 U.S. at 381-82. Under §11, the issuer is held ***strictly liable*** for any material misstatements and omissions within the registration statement, while all other defendants are *prima facie* liable but may raise the affirmative defense of "due diligence" at a later stage. *See id.* at 382; *Twinlab*, 103 F. Supp. 2d at 203 ("the defendant's knowledge of the misrepresentations is not an element of a Section 11 claim; indeed, a defendant can be held liable ***even for an innocent misstatement***").[11]

---

[11]    Similar strict liability provisions apply to §12(a)(2), as well. *See Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004) ("Neither Section 11 nor Section 12(a)(2) requires that plaintiffs allege the scienter or reliance elements of a fraud cause of action."); *Degulis v. LXR Biotechnology*, No. 95 Civ 4204 (RWS), 1997 U.S. Dist. LEXIS 381, at *10 (S.D.N.Y. Jan. 21, 1997) ("Neither knowledge nor reason to know is an element in a plaintiff's *prima facie* case [alleging violations of §§11 and 12(a)(2)].").

- 10 -

### 1.    The Complaint Alleges Actionable False and Misleading Statements

The Complaint alleges the Offering Documents – including the Registration Statement, itself – contained affirmatively false statements and omitted to state certain material information regarding the Certificates.  ¶¶4-6, 56-152.  In particular, the Offering Documents misrepresented and failed to disclose that:

- The underlying mortgage loans were *not* underwritten pursuant to policies and guidelines intended to evaluate the borrowers' credit standing and repayment ability, but instead, were underwritten for the sole purpose of originating *as many loans as possible* without regard to the borrowers' ability to meet their repayment obligations (¶¶5, 56-65, 78-122);

- The appraisals performed in connection with the underlying loans did *not* conform to USPAP requirements and were *not* designed to evaluate the true value of properties being used as collateral, but rather, were artificially inflated in order to falsely justify the loans being made (¶¶66-122);

- The LTV ratios included in the Offering Documents were understated, *false* and inaccurately low (¶123); and

- The credit ratings assigned to the Certificates and included in the Offering Documents were *false*, and understated the true level of risk associated with the Certificates because the ratings were based on outdated and inherently unreliable models and criteria, as well as inaccurate loan information (¶¶124-152).

This misrepresented and omitted information was clearly material, as it related directly to the nature and overall quality of the Certificates.  Indeed, similar allegations of "'systematic disregard'" for stated underwriting guidelines have been found to adequately allege material misrepresentations in this district.  *In re Dynex Capital, Inc.*, No. 05 Civ. 1897 (HB), 2009 U.S. Dist LEXIS 96527, at *24 (S.D.N.Y. Oct. 19, 2009).  Unlike the plaintiffs in *Dynex*, however, Lead Plaintiff need not allege scienter, fraud, or even recklessness, but only a simple misstatement about the loans at issue.  As set forth more fully below, the Complaint alleges just that.

a.    **The Offering Documents Misrepresented the
Underwriting Practices Used**

The Offering Documents affirmatively stated that the underlying mortgage loans supporting the Certificates would be underwritten pursuant to specific policies and guidelines, which were "***primarily intended to evaluate the prospective borrower's credit standing and ability to repay the loan***." ¶98; *see also* ¶¶56, 79, 88-92, 94-96, 107, 109, 113-15, 117, 121.[12]  Although the Offering Documents disclosed that certain loans ***may*** be originated pursuant to standards that were "generally less stringent than" those of Fannie Mae or Freddie Mac, these loans were nonetheless still represented as having been originated pursuant to specific guidelines.  In fact, the Registration Statement, itself, represented that such loans were "***based primarily or entirely on an appraisal*** of the mortgaged property ***and the LTV*** ratio at origination."  *See, e.g.*, ¶¶56, 79, 89, 113.[13]

The Complaint alleges that these representations were materially false and misleading, because the underlying loans were ***routinely and systematically*** originated in direct contravention of these stated policies and guidelines, in order to carry out a single ***undisclosed objective***: to originate as many loans as possible, without regard to the borrowers' repayment ability.  ¶¶56-65, 78-122. The Complaint supports these allegations with a substantial amount of factual detail regarding the

---

[12]    Ignoring that liability flows from the Registration Statement at issue, defendants choose to pretend that the Complaint's factual allegations relating to the remaining Trusts simply do not exist. *See, e.g.*, Defs' Brief at 10 (describing plaintiff's allegations as "completely irrelevant . . . because none of the underwriting and appraisal criteria for any of these five originators appears in the 2007-11AR prospectus supplement").  As set forth above, however, plaintiff has standing to assert claims concerning each and every Trust that issued Certificates pursuant to the single common Registration Statement.  *See* §III.B., *supra*.  As such, defendants' attempt to limit plaintiff's allegations to the 2007-11AR Trust is improper, and despite their obvious preference for doing so, defendants ***cannot*** simply ignore plaintiff's well-pled allegations regarding the remaining Trusts and the underwriting practices of the key originators who contributed loans to those Trusts.  *See* ¶¶56-65, 78-122.

[13]    As discussed *infra*, the Complaint alleges the appraisals were systematically false and artificially inflated, which consequently resulted in false LTV ratios, as well.  ¶¶66-123.

underwriting practices of *five specific loan originators*, each of whom served as a key originator of loans for numerous Trusts during the Class Period. ¶¶78-122. As alleged in the Complaint, these practices *systematically* failed to comply with any of the guidelines and standards set forth in the Offering Documents, and because these deviant practices permeated nearly every loan originated during the relevant time period, they necessarily affected a material amount of loans contained within the Trusts.

In response, defendants point to purported disclosures contained in the 2007-11AR Trust Prospectus Supplement. *See* Defs' Brief at 10-12.[14] Defendants say this text "left no doubt about the *kinds of loans* that MSMCH was purchasing from its correspondent originators." *Id.* at 11. However, *none* of these purported disclosures revealed the *actual* information plaintiff alleges was omitted, and *none* of these purported warnings put investors on notice of the *actual* risks associated with the Certificates.[15] As such, these so-called "disclosures" cannot shelter defendants from liability for the materially false and misleading statements contained in the Offering Documents. *See Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 729 (2d Cir. 1998) ("The cautionary language . . . must relate directly to that by which plaintiffs claim to have been misled."); *P. Stolz*

_____

[14] As discussed above, defendants unjustifiably limit the Complaint's allegations to the 2007-11AR Trust, and simply ignore plaintiff's detailed allegations as they relate to the other Trusts that issued Certificates pursuant to the Registration Statement.

[15] For example, defendants point to the Offering Documents' disclosure that certain loans "'may reflect higher delinquency rates and/or credit losses'" due to "'less stringent'" underwriting standards and the use of loan programs that "'require less documentation and verification'" than traditional programs. Defs' Brief at 11. Defendants also rely on the disclosure that some loans "may represent underwriting exceptions," and the fact that the prospectus supplement stopped short of guaranteeing "that all mortgagors who were approved for loans could, in fact, afford those loans." Defs' Brief at 12. As explained below, this is *not* the information Lead Plaintiff alleges to have been omitted.

*Family P'ship L.P. v. Daum*, 355 F.3d 92, 97 (2d Cir. 2004) ("the cautionary language must . . . warn[] of the specific contingency that lies at the heart of the alleged misrepresentation").

The Complaint alleges that the loans at issue did not comply with the stated underwriting guidelines – ***even those for the low- and no-documentation loan programs***.[16]   Although the Offering Documents warned investors that the Trusts ***may*** contain ***some*** higher-risk loans as a result of the originators' "non-traditional" loan programs, the Offering Documents represented that even those loans were underwritten pursuant to ***some*** guidelines.  *See, e.g.*, ¶¶55-56, 79, 88-92, 94-96, 98, 107, 109, 113-15, 117, 121.  Yet, in reality, even those "less stringent" guidelines were completely ignored, as the only "guideline" originators relied on was simply: ***more is better***.  ¶¶56-65, 78-122. *See Dynex*, 2009 U.S. Dist. LEXIS 96527, at *26 ("At some point, statements by a defendant that it 'generally' adheres to a particular policy become misleading when in fact there is no such policy or the policy is something else altogether.").

The fact that the underlying loans were ***routinely and systematically*** underwritten pursuant to a total lack of ***any*** guidelines was ***not*** revealed ***anywhere*** in the disclosures now relied on by defendants.  *See id.* at *27 (addressing similar allegations, and finding statements "misleading to the extent that they claim that ***some*** standards pertaining to borrower documentation or creditworthiness were followed when in fact such requirements were regularly or routinely disregarded or were based upon falsified loan documentation") (emphasis in original).  Moreover, this material omission was not revealed to investors by defendants' purported disclosure that some loans "may represent underwriting exceptions" based upon the existence of "compensating factors" (Defs' Brief at 12) –

---

[16]     *See, e.g.*, ¶5 ("In cases where low or no-documentation loans were made, borrowers were given loans where the borrowers' stated inflated income could not possibly be reconciled with the jobs claimed on the loan applications.").

particularly where the Complaint alleges the only compensating factor present was a desire to "purchase as many loans as possible." *See, e.g.*, ¶61.[17]

        **b.**     **The Offering Documents Misrepresented the Appraisal Practices Employed by Originators**

Several statements in the Offering Documents – including the Registration Statement, itself – emphasized the significant role that property appraisals would play in the origination of the underlying mortgage loans and the securitization process.[18]  Defendants also made specific representations in the documents about how such appraisals were to be conducted – most notably, stating that "[a]ll appraisals conform to the Uniform Standards of Professional Appraisal Practice [USPAP]." *See* ¶¶66, 91, 96, 107, 114, 121.  As alleged in the Complaint, however, these statements were false.  The appraisals were rarely, if ever, conducted in accordance with USPAP, and were, in fact, systematically inflated as a business practice of the originating lenders.  ¶¶66-122.

Defendants now seek to avoid liability for these misstatements by mischaracterizing plaintiff's allegations.  Defs' Brief at 17-18.[19]  Contrary to defendants' assertions, however, the Complaint clearly sets forth detailed factual allegations regarding the improper appraisal practices of *five specific loan originators*, each of whom was a key originator of loans for numerous Trusts during the Class Period.  *See* ¶¶78-122.  As detailed in the Complaint, the appraisals conducted by these originators during the relevant time period *systematically* failed to conform to USPAP

---

[17]     *See also In re Wash. Mut.*, 259 F.R.D. 490, 505-06 (W.D. Wash. 2009) ("Such disregard of underwriting standards, where the exceptions nearly swallow the rules, is tantamount to abandoning those standards.").

[18]     *See, e.g.*, ¶56 ("loan purchasing decisions for such mortgage loans may be based *primarily or entirely on an appraisal* of the mortgaged property").

[19]     Here, again, defendants unjustifiably seek to limit the scope of the Complaint to the 2007-11AR Trust.

requirements and routinely resulted in artificially inflated property appraisals. *Id.* Moreover, because these flawed and improper practices, which contradicted representations made in the Offering Documents, permeated nearly every loan originated by these lenders during the relevant time period, they necessarily affected a material amount of loans contained in the Trusts. *Id.*

c.     **The LTV Ratios Included in the Offering Documents Were False and Misleading**

As detailed in the Complaint, the LTV ratio is recognized as a significant metric in attempting to quantify the amount of risk associated with mortgage-backed securities, such as the Certificates. ¶¶68-70. For this reason, the Offering Documents made several representations to investors emphasizing the purported LTV ratios associated with the underlying mortgage loans. ¶123. Because the appraisals associated with the underlying mortgage loans were routinely and systematically inflated and inaccurate, the LTV ratios disclosed in the Offering Documents were *false* and artificially low, making it appear as if the underlying loans were safer than they actually were. *Id.*[20] As a result, the Offering Documents were materially false and misleading.

d.     **The Credit Ratings Included in the Offering Documents Were False and Misleading**

The Offering Documents very clearly set forth the credit ratings assigned to the Certificates, and emphasized the significance of such ratings by informing investors it was "a condition of the

---

[20]     Defendants' contention that the LTV ratios were not false *as a matter of law* because the "value" used was not always the appraised value is misleading. *See* Defs' Brief at 18. As an initial matter, defendants misrepresent the disclosure in the Prospectus Supplement: for refinancings, the "value" used in the LTV ratio was *always* the appraised value, *not* the lesser of the appraised value or the sale price as defendants imply. *See* Declaration of James P. Rouhandeh in Support of Defendants' Motion to Dismiss the Consolidated Amended Complaint ("Rouhandeh Decl."), Ex. A. at S-29. Moreover, defendants' argument does nothing but raise a question of fact inappropriate for resolution on a motion to dismiss. By alleging that the appraisals were systematically inflated, and regularly used in calculating the LTV ratios, plaintiff has stated a claim that is clearly "'plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949.

issuance of the Certificates that they receive the respective ratings set forth . . . [in the] prospectus supplement[s]."  ¶124.  The ratings, however, had been derived in reliance on inherently flawed models and inaccurate loan information, which had the effect of producing artificially high ratings. ¶¶124-152.  As a result, the ratings *themselves* were false and misleading.

Defendants rely on SEC Rule 436(g) to argue that "ratings are not even considered part of the offering documents and cannot give rise to the Securities Act liability."  Defs' Brief at 19.  Rule 436(g), however, does not apply to any of the defendants at issue in this case, as it was only intended to exempt the *rating agencies*, themselves, from liability under the Securities Act.[21]  Moreover, Rule 436(g) is inapplicable for the additional reason that the Rule, by its own terms, applies only to security ratings assigned to "a class of *debt securities*, a class of *convertible debt securities*, or a class of *preferred stock*."  SEC Regulation C, Rule 436(g)(1), 17 C.F.R. §230.436(g)(1).  As the Offering Documents make clear, the Certificates are *not* debt securities, convertible debt securities or preferred stock, but rather, common *equity interests* in the issuing Trusts.[22]  Defendants thus remain liable for these misrepresentations.[23]

---

[21]     *See Disclosure of Security Ratings in Registration Statements*, SEC Release Nos. 33-6336, 34-18012, 46 Fed. Reg. 42024, 42025 (Aug. 18, 1981) ("Rule 436(g) . . . if adopted, would not require a *rating organization* to consent under Section 7 and would exempt *it* from liability as an expert under Section 11 of the Act.").

[22]     *See* Declaration of Thomas E. Egler in Support of Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Complaint ("Egler Decl."), Ex. A at 3 ("The certificates will represent *beneficial interests* in the assets of the issuing entity."), 67 ("Morgan Stanley Capital I Inc. will offer one or more series of certificates, which represent *beneficial ownership interests* in the related trust."); *see also Nationally Recognized Statistical Rating Organizations*, SEC Release Nos. 33-7085; 34-34616, 59 Fed. Reg. 46314, 46316 n.19 (Sept. 7, 1994) (stating that "Rule 436(g) under the Securities Act does not cover equity securities").

[23]     Moreover, even if Rule 436(g) were somehow applicable to the Certificates, defendants' liability under §12(a)(2) would be unaffected because the Rule explicitly applies only to §§7 and 11,

Next, defendants attempt to disclaim responsibility for publishing the false ratings by asserting "there is no misstatement" because "plaintiff does not allege that the prospectus supplement inaccurately conveyed the actual ratings assigned by S&P and Moody's." Defs' Brief at 19. Defendants' argument, however, ignores that *strict liability* attaches to them under the Securities Act where "*any part* of the registration statement" contains a material misstatement. 15 U.S.C. §77k(a). As defendants correctly observe, the Complaint does *not* attack the accuracy of defendants' "reporting." Instead, the Complaint alleges that the "actual ratings assigned by S&P and Moody's" were *themselves* false and misleading. *See* ¶¶124-152. Having affirmatively chosen to include the ratings in the Offering Documents, defendants are *strictly liable* for their falsity, *regardless of who may have initially "assigned" them*. *See In re Lilco Sec. Litig.*, 625 F. Supp. 1500, 1503 (E.D.N.Y. 1986).

Moreover, defendants' argument that the ratings constitute subjective opinions that may only be actionable if S&P and Moody's "did not genuinely hold the opinions when they expressed them" is wrong. Defs' Brief at 19. As an initial matter, the Complaint alleges *defendants provided the agencies with the false data* underlying the ratings. Further, this argument again flies directly in the face of the strict liability provisions of the Securities Act, which do not require Lead Plaintiff to allege knowledge on behalf of defendants.[24] More importantly, even under the line of cases defendants rely on – which are *not* Securities Act cases – a subjective opinion "may still be actionable if the speaker does not genuinely *and reasonably* believe it *or if it is without a basis in*

_____

and not §12. *See* 46 Fed. Reg. 42024, 42025 ("Rule 436(g) . . . if adopted, would not require a rating organization to consent under Section 7 and would exempt it from liability as an expert under Section 11 of the Act.").

[24]   *See LXR Biotechnology*, 1997 U.S. Dist. LEXIS 381, at *10 ("Neither knowledge nor reason to know is an element in a plaintiff's *prima facie* case [alleging violations of §§11 and 12(a)(2)].").

*fact*." *In re IBM Corporate Sec. Litig.*, 163 F.3d 102, 109 (2d Cir. 1998).  Here, the Complaint alleges any belief the Rating Agencies may have had in the accuracy of the ratings assigned to the Certificates was clearly **not reasonable** because those ratings had **no basis in fact**.  ¶¶126-152.

> **2.    The Complaint Alleges Lead Plaintiff and the Members of the Class Have Been Damaged**

Under §11, damages are **not** a *prima facie* element that must be affirmatively alleged.  *See Adair v. Kaye Kotts Assocs.*, No. 97 Civ. 3375 (SS), 1998 U.S. Dist. LEXIS 3900, at *26 (S.D.N.Y. Mar. 27, 1998) ("the measure of damages is **not** 'an essential element of [plaintiffs'] case [under §11]'"); *accord Countrywide*, 588 F. Supp. 2d at 1168 n.40 (citing *Huddleston*, 459 U.S. at 382) ("Damages are **not an element** [of a §11 claim].");  *Grossman v. Waste Mgmt., Inc.*, No. 83 C 2167, 1983 WL 1370, at *8 (N.D. Ill. Sept. 9, 1983) ("A cause of action under Section 11 requires only a material misrepresentation or omission in a prospectus. **Damages need not be alleged**.").  Instead, §11 explicitly makes **lack of damages** an affirmative defense, and damages under the statute are **presumed** wherever a plaintiff adequately states a claim and alleges a drop in the security's value. *See* 15 U.S.C. §77k(e); *In re Constar Int'l Sec. Litig.*, 585 F.3d 774, 2009 U.S. App. LEXIS 23844, at *21 (3rd Cir. 2009) ("injury and loss are presumed under §11").[25]  The Complaint satisfies any conceivable burden with regard to plaintiffs' damages under §11 by plainly alleging a decrease in the value of the Certificates.  ¶¶6, 153-155.

Under §11, any plaintiff who has purchased a security pursuant or traceable to a registration statement and who can demonstrate a material misstatement or omission is entitled to "recover such damages as shall represent the difference between the amount paid for the security . . . and . . . the

---

[25]    *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35-36 (2d Cir. 2009) (describing the "heavy burden" that Securities Act defendants bear in "demonstrating that something other than the misstatement at issue caused plaintiff's loss").

*value* thereof as of the time such suit was brought." 15 U.S.C. §77k(e); *see also Countrywide*, 588 F. Supp. 2d at 1168 (citing *Huddleston*, 459 U.S. at 382). As such, the damages provision of the statute, by its plain terms, focuses on the "*value*" of the security, *not* whether a plaintiff is still receiving the benefit of the bargain, or whether the contract has been breached. Because the Complaint clearly alleges a decrease in the *value* of the Certificates, Lead Plaintiff has adequately alleged cognizable damages under §11. ¶¶6, 153-55.[26]

Defendants argue that "investors can suffer damages only when they do not receive the pass-through cash flow payments to which they are entitled." *See* Defs' Brief at 21. They are wrong. The Second Circuit has explicitly held that contract damages, or so-called "benefit-of-the-bargain" damages, like defendants seek to focus on here, are not available. *See McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1047-49 (2d Cir. 1995). Much like a stock's value may decline even though it continues to pay a dividend, the Certificates here have declined in value even though pass-through payments continue to be made.

Further, defendants' argument contradicts their *own* asserted definition of value with regard to mortgage-backed securities. According to defendants, "valuation of mortgage-backed certificates such as those at issue here 'essentially is an exercise in *estimating expected future cash flows*.'" Defs' Brief at 21. As such, under defendants' *own* definition, the Complaint alleges a *decrease in value* by asserting "the holders of the Certificates are exposed to much more risk with respect to both the timing and absolute [future] *cash flow to be received*." ¶6.

Defendants also argue that they can *never* be held liable for their misstatements because they said that "'[a] secondary market for the offered certificates *may* not develop.'" *See* Defs' Brief at

---

[26]      Section 12(a)(2) contains a similar damages provision, but also provides plaintiff the even more powerful equitable remedy of recession. 15 U.S.C. §77l.

22. They are wrong again.  The Complaint does not allege that defendants misled investors regarding the nature or adequacy of the secondary market for their Certificates.  Rather, Lead Plaintiff alleges that the *value* has decreased.  ¶¶6, 153-55.  Nothing in defendants' purported disclosures negates that allegation.  Indeed, defendants have submitted rating agencies' downgrades with their motion that track the reduction in value for the Certificates.  *See* Rouhandeh Decl., Ex. D.  Moreover, the Second Circuit has held that a market is not required to show damages under §11.  *See Wherehouse Entm't*, 65 F.3d at 1048-49 ("the value of a security may not be equivalent to its market price").[27]

Defendants can raise their "lack of damages" defense in their answer and at trial, but it is not suitable for determination on a motion to dismiss.  As numerous courts have held, the determination of a particular security's "value" is a fact-intensive issue that is "inappropriate to resolve" on the pleadings.  *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 351 n.80 (S.D.N.Y. 2003) (while "[§]11(e) sets the measure of damages for a plaintiff still holding her securities at the 'value' of those securities at the time of suit. . . . the determination of value is a fact-intensive inquiry").  Here, the Complaint's allegations concerning plaintiffs' damages are more than sufficient to withstand a motion to dismiss, particularly in light of the fact that damages are not a required element for stating a claim under the Securities Act.  *See Countrywide*, 588 F. Supp. 2d at 1168; *Adair*, 1998 U.S. Dist. LEXIS 3900, at *26; *Grossman*, 1983 WL 1370, at *8.

### 3.   The Complaint Alleges Compliance with the Statute of Limitations

Pursuant to §13 of the Securities Act, an action brought under §§11 or 12(a)(2) of the Securities Act must be brought "within one year after the discovery of the untrue statement or the

---

[27]   *See also Constar*, 2009 U.S. App. LEXIS 23844, at *16 (holding that, under §11, "the efficiency of a market . . . is not at all relevant").

omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. §77m.  The first complaint in this action alleging false statements in the Registration Statement was filed in California Superior Court on December 2, 2008.[28]  As such, in order to comply with the relevant statute of limitations, plaintiff need only allege that "discovery of the untrue statement or the omission" could not "have been made by the exercise of reasonable diligence" prior to December 2, 2007, one year prior to the filing of the initial complaint.

Here, plaintiff's allegations easily satisfy this requirement.  The Complaint sets forth detailed factual allegations demonstrating that defendants' misrepresentations did not begin to be revealed to the public until "mid-2008," when the Ratings Agencies began to downgrade the Certificates in earnest and information started to emerge regarding the now well-publicized improprieties that had permeated the practices of the underlying loan originators and the Rating Agencies.[29]  These

---

[28]    Defendants appear to contend, without explanation, that the Complaint, which was filed on September 15, 2009, is the initial complaint in this matter for statute of limitations purposes.  Defs' Brief at 24.  But, as defendants are well aware, this case was originally filed against defendants in California Superior Court on December 2, 2008, before subsequently being removed and, ultimately, assigned to this Court on March 9, 2009.  *See* Docket No. 1.

[29]    *See, e.g.*, ¶6 (alleging, "[b]y mid-2008, the truth about the mortgage loans that secured the Certificates began to be revealed to the public [and] [t]he credit rating agencies also began putting negative watch labels on the Certificate tranches or classes and to downgrade previously assigned ratings"); ¶94 (identifying September 30, 2008 disclosure regarding Fifth Third's "poor lending habits"); ¶130 (identifying April 22, 2008 Senate Hearing testimony of Fitch President and CEO, Stephen Joynt, admitting that Fitch's rating models did not account for "the dramatic shift in borrower behavior brought on by changing practices in the market"); ¶140 (identifying April 22, 2008 Senate Hearing testimony of former Moody's employee, stating "[t]here is a far more serious conflict of interest than is commonly believed at the root of the current rating agency business model"); ¶141 (identifying April 11, 2008 *Wall Street Journal* article discussing "erosion" of standards at Moody's); ¶142 (identifying April 22, 2008 statement to Congress by former Chairman of the SEC, Christopher Cox, which called into question "the integrity of the ratings process as a whole"); ¶145 (identifying October 22, 2008 Congressional Hearing testimony of Fitch President and CEO, Stephen Joynt, addressing "the extent of shoddy mortgage origination practices and fraud in the 2005-07 period"); ¶146-149 (discussing July 8, 2008 SEC report concerning Rating Agencies); ¶164 (alleging, "[a]t the time of their purchases of the Certificates, Plaintiff and other members of the Class were without

allegations satisfy the pleading requirements under Rule 8(a) with regard to the statute of limitations in a straightforward manner, and nothing more is required of plaintiff at this stage.

Because plaintiff has satisfied its pleading requirement, the burden regarding the statute of limitations shifts to defendants to establish, as *affirmative defense*, that plaintiff was on "inquiry notice" of its claims more than one year prior to the filing of the first complaint.[30]  The Second Circuit has set forth a particularly stringent standard, holding that "'[i]nquiry notice exists only when *uncontroverted* evidence *irrefutably* demonstrates when plaintiff discovered or should have discovered the fraudulent conduct.'"  *Newman v. Warnaco Group, Inc*., 335 F.3d 187, 194-95 (2d Cir. 2003) (quoting *Nivram Corp. v. Harcourt Brace Jovanovich, Inc*., 840 F. Supp. 243, 249 (S.D.N.Y. 1993)).  Moreover, "the Second Circuit has stressed the caution with which courts must approach the inquiry notice question on a motion to dismiss."  *In re Polaroid Corp. Sec. Litig.*, 465 F. Supp. 2d 232, 246 (S.D.N.Y. 2006) (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005)) ("'Whether a plaintiff had sufficient facts to place it on inquiry notice is "often *inappropriate for resolution on a motion to dismiss*."'").  Indeed, "Southern District courts have variously described defendants' burden in this regard as '*extraordinary*' and appropriate only in '*extreme circumstances*.'"  *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 347 (S.D.N.Y. 2000).

Defendants' argument fails to demonstrate that discovery of the misstatements alleged in the Complaint "should have been made by the exercise of reasonable diligence" prior to December 2,

---

knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to mid-2008").

[30]     *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) (describing the statute of limitations as "an affirmative defense, . . . on which the defendant has the burden of proof").

2007.  15 U.S.C. §77m.[31]  In fact, defendants' evidence actually supports Lead Plaintiff's position that the misstatements could not have reasonably been discovered until sometime in 2008. According to defendants, the delinquency rates were reported as being below 10% as late as the **end** of November 2007.  Defs' Brief at 24.  It wasn't until the monthly report issued on December 26, 2007, **less than** one year prior to the filing of the initial complaint, that these rates actually began rising to alarming levels, ultimately skyrocketing to more than 20% by the end of March 2008.  *Id.* Moreover, the vast majority of ratings downgrades relied on by defendants occurred in 2008.  *See* Defs' Brief at 24-25.  In fact, of the 18 Certificate series for which defendants attach historical ratings, only **three** were downgraded by S&P prior to 2008, and **none** were downgraded by Moody's prior to 2008.  *See* Egler Decl., Ex. B (summarizing Rouhandeh Decl., Ex. D).

Clearly, defendants have **not** offered "'**uncontroverted** evidence . . . **irrefutably** demonstrat[ing]'" that plaintiff should have discovered the misstatements alleged in the Complaint prior to December 2, 2007.  *Initial Pub. Offering*, 341 F. Supp. 2d at 347.  As a result, defendants "cannot satisfy the heavy burden of establishing inquiry notice as a matter of law," and their attempt to assert the statute of limitations as an affirmative defense to plaintiff's claims must therefore be denied.  *Id.*

---

[31]     Defendants' argument relies extensively on the availability of various materials from outside the pleadings.  While plaintiff recognizes the Court may take judicial notice of the fact that such materials were in existence at the time, plaintiff objects to the use of any such materials to support the truth of the matters asserted therein.  *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 424 (2d Cir. 2008) (noting with approval that, "[t]he District Court took judicial notice of, *inter alia*, media reports . . . and regulatory filings" but "**did 'not take judicial notice of the documents for the truth of the matters asserted in them**, but rather to establish that the matters [had] been publicly asserted'").

**D.      The Complaint Adequately Alleges Violations of §15 of the Securities Act**

"In order to state a claim for control person liability under Section 15, 'a plaintiff must allege "(a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator."'" *In re WorldSpace Sec. Litig.*, No. 07 Civ. 2252 (RMB), 2008 U.S. Dist. LEXIS 56224, at *20 (S.D.N.Y. July 21, 2008).  Here, plaintiff's §15 claim must be upheld because, as set forth above, plaintiff has adequately alleged primary violations of both §§11 and 12(a)(2), and the Complaint sufficiently alleges that Morgan Stanley, the Individual Defendants and MSMC each exercised control over the issuer of the Certificates.  ¶¶10-11, 15-19, 172-175.[32]

## IV.      CONCLUSION

For the above stated reasons, defendants' motion should be denied.[33]

DATED:  December 28, 2009                          Respectfully submitted,


                                                   s/ THOMAS E. EGLER
                                                   THOMAS E. EGLER

---

[32]      Moreover, defendants' motion fails to challenge the sufficiency of the Complaint's "control" allegations regarding Morgan Stanley, the Individual Defendants and MSMC.  Defs' Brief at 25.  As such, defendants have conceded that such allegations are adequate, and plaintiff's §15 claim must be upheld if the Court upholds any of the primary violations alleged under §§11 and 12(a)(2). *Strassberg v. N.Y. Hotel & Motel Trades Council, Local 6*, 31 Fed. Appx. 15, 17 (2d Cir. 2002) ("failure to raise [an] issue in [the] opening brief waives it").

[33]      Should the Court grant any portion of defendants' motion, plaintiff respectfully requests leave to amend the Complaint in accordance with the Court's order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Castro v. City of New York*, No. 05 Civ. 593 (LAK) (MHD), 2009 U.S. Dist. LEXIS 63836, at *35-*36 (S.D.N.Y. July 22, 2009) ("'In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."'") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ARTHUR C. LEAHY
THOMAS E. EGLER
SCOTT H. SAHAM
SUSAN G. TAYLOR
NATHAN R. LINDELL
MATTHEW I. ALPERT
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
CAROLINA C. TORRES
JARRETT S. CHARO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

S:\CasesSD\Morgan Stanley MBS\secy\BRF00063608.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 28, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 28, 2009.

s/ THOMAS E. EGLER
THOMAS E. EGLER

COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:TomE@csgrr.com

# Mailing Information for a Case 1:09-cv-02137-LTS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Matthew I. Alpert**
  malpert@csgrr.com,e_file_sd@csgrr.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com,jrubins@ssbb.com

- **Timothy Alan DeLange**
  timothyd@blbglaw.com,kayem@blbglaw.com,kristinas@blbglaw.com,matthewj@blbglaw.com

- **Thomas E. Egler**
  tome@csgrr.com,stremblay@csgrr.com,e_file_sd@csgrr.com

- **Andrew James Ehrlich**
  aehrlich@paulweiss.com

- **William Joseph Fenrich**
  william.fenrich@dpw.com,ecf.ct.papers@dpw.com

- **Martin Flumenbaum**
  mflumenbaum@paulweiss.com,sandreev@paulweiss.com

- **Christopher Anthony Gorman**
  cgorman@cahill.com

- **Christopher Burch Hockett**
  chris.hockett@dpw.com

- **Roberta Ann Kaplan**
  rkaplan@paulweiss.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Arthur C. Leahy**
  artl@lerachlaw.com

- **Nathan R. Lindell**
  nlindell@csgrr.com

- **Kristina Marie Mentone**
  kmentone@reedsmith.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,cgorman@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com

- **Scott H. Saham**
  scotts@csgrr.com

- **Hayward Homes Smith**
  hhsmith@dpw.com,ecf.ct.papers@dpw.com

- **Tobias James Stern**
  tstern@paulweiss.com

- **David R. Stickney**
  davids@blbglaw.com

- **Susan G. Taylor**
  susant@csgrr.com

- **David A. Thorpe**
  davidt@blbglaw.com

- **Sarah Penny Windle**
  windls@cahill.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
David T. Biderman
Perkins, Coie, L.L.P.
1620 26th Street 6th
South Tower
Santa Monica, CA 90404-4013

Keith E. Eggleton
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304

Judith B. Gitterman
Perkins Coie LLP (Santa Monica)
South Tower
1620 26th Street, 6th Floor
Canta Monica, CA 90404

Heather Brae Hoesterey
Reed Smith, LLP (San Francisco)
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111
```

**David Andrew McCarthy**
Wilson Sonsini Goodrich & Rosati (CA)
650 Page Mill Road
Palo Alto, CA 94304

**Brett M. Middleton**
Bernstein Litowitz Berger & Grossmann LLP (San Diego)
12481 High Bluff Drive
Suite 300
San Diego, CA 92130