UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
IN RE MORGAN STANLEY                                  :
MORTGAGE PASS-THROUGH                                 :
CERTIFICATES LITIGATION                               :
                                                      :    MASTER FILE
---------------------------------------------------:       09 Civ. 2137 (LTS) (MHD)
                                                      :
This Document Relates To:                             :    ECF CASE
                                                      :
    ALL ACTIONS                                       :
                                                      :
------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

Attorneys for Defendants Morgan Stanley
  Capital I Inc., Morgan Stanley Mortgage
  Capital Holdings LLC, Morgan Stanley &
  Co. Incorporated, Morgan Stanley, David
  R. Warren, Anthony B. Tufariello,
  William J. Forsell, and Steven S. Stern

**TABLE OF CONTENTS**

ARGUMENT ....................................................................................................................................1

I.   WVIMB Lacks Constitutional and Statutory Standing to Assert Claims Arising from
     the Certificates Issued by Trusts Other Than 2007-11AR ....................................................1

II.  WVIMB Has Not Alleged Any Actionable Misrepresentations or Omissions ...................5

     A.   WVIMB Has Abandoned Any Attempt to Plead Its Own Claim Adequately.........5

     B.   The Prospectus Supplement Was Not Misleading Regarding the Underwriting
          for the Loans In the Trust........................................................................................6

     C.   The Prospectus Supplement Was Not Misleading Regarding Appraisals or
          Loan-to-Value Ratios...............................................................................................7

     D.   The Prospectus Supplement Was Not Misleading With Respect to Ratings...........8

III. WVIMB Has Not Alleged Any Injury Cognizable Under the Securities Act .....................8

IV.  WVIMB Has Failed to Plead Compliance With the Statute of Limitations ........................9

CONCLUSION...............................................................................................................................11

## TABLE OF AUTHORITIES

CASES

PAGE

Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009)......................................................................................5

Bamberg v. SG Cowen, 236 F. Supp. 2d 79 (D. Mass. 2002).........................................................10

Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,
    504 F.3d 229 (2d Cir. 2007).....................................................................................................5

Cook v. Avien, Inc., 573 F.2d 685 (1st Cir. 1978) ...........................................................................9

In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ......................2, 4

In re Credit Suisse First Boston Corp. Sec. Litig.,
    No. 97 Civ. 4760 (JGK), 1998 U.S. Dist. LEXIS 16560 (S.D.N.Y. Oct. 20, 1998) .................5

de la Fuente v. DCI Telecomms., Inc., 206 F.R.D. 369 (S.D.N.Y. 2002) .......................................9

DeMaria v. Andersen, 318 F.3d 170 (2d Cir. 2003) ........................................................................4

In re Dreyfus Aggressive Growth Mut. Fund Litig.,
    No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000)..................5

In re Dynex Capital, Inc., Sec. Litig.,
    No. 05 Civ. 1897 (HB), 2009 U.S. Dist. LEXIS 96527 (S.D.N.Y. Oct. 19, 2009) ...................7

In re Fleming Cos. Sec. & Derivative Litig.,
    No. 5-03-MD-1530 (TJW), 2004 U.S. Dist. LEXIS 26488 (E.D. Tex. June 10, 2004) ........2, 4

In re Geopharma, Inc. Sec. Litig., 399 F. Supp. 2d 432 (S.D.N.Y. 2005).......................................6

Goldberger v. Bear, Stearns & Co.,
    No. 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714 (S.D.N.Y. Dec. 28, 2000).................6

Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123 (3d Cir. 1987) ...........5

Krome v. Merrill Lynch & Co., 637 F. Supp. 910 (S.D.N.Y. 1986) ................................................9

Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co.,
    No. 07-5423, 2009 U.S. Dist. LEXIS 74382 (E.D. Pa. Aug. 20, 2009) ....................................8

In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig., 434 F. Supp. 2d 233 (S.D.N.Y. 2006) .............5

In re MobileMedia Sec. Litig., 28 F. Supp. 2d 901 (D.N.J. 1998) ..............................................2, 4

Morin v. Trupin, 778 F. Supp. 711 (S.D.N.Y. 1991).....................................................................10

Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,
    No. 08-10446-RGS, 2009 U.S. Dist. LEXIS 91789 (D. Mass. Sept. 30, 2009) ....................1, 4

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004)...........................................................................7

In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579 (S.D.N.Y. 2006)......1, 5

Warth v. Seldin, 422 U.S. 490 (1975).............................................................................................1

In re Westinghouse Sec. Litig., 90 F.3d 696 (3d Cir. 1996)............................................................5

In re WorldCom, Inc. Sec. Litig.,
    No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 4240 (S.D.N.Y. Mar. 19, 2004)..............2, 4

## STATUTES & RULES

17 C.F.R. § 230.412(c)....................................................................................................................3

17 C.F.R. § 230.436(g)(1)...............................................................................................................8

Fed. R. Civ. P. 8(a) .....................................................................................................................7, 8

Fed. R. Civ. P. 9(b) .........................................................................................................................8

Fed. R. Civ. P. 12(b)(1).................................................................................................................11

Fed. R. Civ. P. 12(b)(6).................................................................................................................11

Fed. R. Civ. P. 15..........................................................................................................................10

Section 11 of the Securities Act of 1933 ........................................................................................1

Section 12(a)(2) of the Securities Act of 1933 ...............................................................................1

Section 13 of the Securities Act of 1933 ........................................................................................9

## ARGUMENT

I. **WVIMB Lacks Constitutional and Statutory Standing to Assert Claims Arising from the Certificates Issued by Trusts Other Than 2007-11AR**

WVIMB seeks to pursue claims with respect to 31 separate categories of mortgage pass-through certificates, each of which was issued by a unique mortgage loan trust comprised of a unique mortgage loan pool originated by a unique mix of third-party originators. Defendants have demonstrated that WVIMB lacks Article III standing to assert claims with respect to certificates which WVIMB admittedly never purchased or acquired, and which therefore could not have caused it any "injury-in-fact." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., No. 08-10446-RGS, 2009 U.S. Dist. LEXIS 91789, at *9-13 (D. Mass. Sept. 30, 2009). WVIMB admits that it lacks statutory standing under Section 12(a)(2) but persists in arguing that it has Section 11 standing with respect to certificates it admittedly did not purchase on the sole basis that those certificates were issued pursuant to the same shelf registration statement as the certificates it did purchase. (Opp. at 8-9.) WVIMB's argument is incorrect because the mere existence of a common shelf registration statement does not confer upon WVIMB any stake in the outcome of Section 11 claims relating to certificates it never purchased, let alone a "sufficiently direct and substantial interest" to justify invocation of this Court's Article III jurisdiction. In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 605 (S.D.N.Y. 2006); see Warth v. Seldin, 422 U.S. 490, 498 (1975).

WVIMB's argument is based on four cases in which the named plaintiff was allowed to pursue claims with respect to a class of security that it did not purchase. (Opp. at 8.) In each of those cases, however, it was held that the named plaintiff had a sufficient stake in the claims to satisfy Article III requirements because – unlike here – the purchased and non-purchased securities were purchased from a single issuer based on identical misrepresentations regarding

1

the financial condition of a single entity. For example, in In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 4240, at *20-21 (S.D.N.Y. Mar. 19, 2004), the court held that the named plaintiffs had standing to pursue claims with respect to certain Foreign Notes which they had not purchased. Both the non-purchased Foreign Notes and the U.S. dollar bonds that had been purchased derived their value from their common issuer, WorldCom, and both were allegedly affected by the same misrepresentations regarding WorldCom's financial condition. See id. The same can be said of the three remaining cases cited by plaintiffs.[1]

These cases are inapposite. First, the purchased and non-purchased certificates were issued here by 31 distinct issuers.[2] Second, the alleged misrepresentations pertaining to each of the 31 issuing trusts differ because they are contained in separate prospectus supplements that describe separate trusts, comprised of different mortgage loan pools and originated by different mixes of originators. Third, the asserted losses of plaintiffs were allegedly caused not by the deterioration in the financial condition of a single corporate issuer, but by the performance of separate and distinct pools of loans underlying each of the 31 issuing trusts.[3]

---

[1] See In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132, 1144, 1167 (C.D. Cal. 2008) (purchased notes and non-purchased notes both derived their value from Countywide, and value of both was allegedly harmed by the same misrepresentations regarding Countrywide's financial condition); In re Fleming Cos. Sec. & Derivative Litig., No. 5-03-MD-1530 (TJW), 2004 U.S. Dist. LEXIS 26488, at *138-39 (E.D. Tex. June 10, 2004) (purchased stock and non-purchased notes both derived their value from Fleming Companies, and value of both was allegedly harmed by the same misrepresentations regarding that company's financial condition); In re MobileMedia Sec. Litig., 28 F. Supp. 2d 901, 911 n.7, 915 (D.N.J. 1998) (purchased stock and non-purchased notes both derived their value from MobileMedia and its operating subsidiary, and value of both was allegedly harmed by the same misrepresentations regarding MobileMedia's financial condition).

[2] This is what brings this case so squarely within the holdings of the "mutual fund" cases that WVIMB dismisses. (Opp. at 9 n.10.)

[3] Notably, WVIMB does not even attempt to argue that it has standing based on an allegation that the losses of all purchasers are based on a common fraudulent scheme. In fact, (…continued)

Moreover, even if a common registration statement may in some circumstances indicate a "sufficiently direct and substantial interest" to confer Article III standing, it does not in this case. Here, the shelf registration statement filed in December 2005 (with minor amendments in February and March 2006) consisted of a two-page registration statement, a base prospectus containing general information about the types of certificates that would be offered later, and an incomplete, model prospectus supplement to be filled in later.[4]  (None of the foregoing contained any of the alleged misrepresentations.)  Because the trusts and loan pools for the future offerings did not yet exist, the model prospectus supplement contained blank spaces for the factual information specific to each future offering, including the identity of the issuing trust, the identity of the major originators for that trust, underwriting criteria, and information regarding the loans in the loan pool for that trust.  When, at a later date, a loan pool was ready to be securitized into a new trust, the missing information was filled in (i.e., the model prospectus supplement was turned into an actual prospectus supplement), a copy of the base prospectus was attached, and the document was filed with the SEC.  It was <u>only</u> the 31 actual prospectus supplements – not the registration statement or the base prospectus or the blank model prospectus supplement – that contained the alleged misrepresentations regarding actual loans and loan originators.  In fact, the blank model prospectus was superseded and thereby effectively removed from the registration statement, <u>see</u> 17 C.F.R. § 230.412(c), upon the filing of the 31 distinct prospectus supplements.

---

(continued…)
WVIMB has specifically disclaimed any allegation that the alleged misrepresentations resulted from a fraudulent scheme relating to all of the trusts.  (Opp. at 6; CAC ¶¶ 156, 165, 170.)

[4] The shelf registration statement (with base prospectus and model prospectus supplement) is available at www.sec.gov/Archives/edgar/data/762153/000091412105002461/p122305-s3.txt.

3

Thus, the offering process here was completely different than the offering process in WorldCom, Fleming Cos., and MobileMedia, which did not involve the shelf registration process at all, but rather conventional registered offerings in which a single registration statement was the actual document by which both the purchased and non-purchased securities were sold to investors. Moreover, unlike Countrywide, this case does not involve a shelf registration statement containing alleged misrepresentations about an issuer followed by "de minimis amendment[s]" to that registration statement at the time of the various offerings by that issuer. (Opp. at 8-9.) Rather, it involves 31 offering documents used at different times over the course of two years, each containing different representations regarding completely different issuing trusts comprised of completely different loan pools.[5] Constitutional standing cannot turn on the mere fact that these distinct offerings related to the same shelf registration statement as held in a recent and very similar case brought by the same plaintiffs' counsel that brought this action. See Nomura, 2009 U.S. Dist. LEXIS 91789, at *11 (no standing with respect to unpurchased mortgage pass-through certificates in spite of existence of common shelf registration statement).

WVIMB also persists in offering the argument that the standing question should be put off until class certification. (Opp. at 7-8.) Cases too numerous to list here, however, have established that a named plaintiff must establish its standing, which is a "threshold question,"

---

[5] The debt issuances in Countrywide involved the same issuer (Countrywide itself) and the same misrepresentations regarding the financial condition of that issuer; thus, the holding that constitutional standing existed because plaintiffs' injuries were of "the same type" and arose from "the same harmful conduct" as the injuries of the purchasers they sought to represent, 588 F. Supp. 2d at 1167 n.39, is inapposite here. The case's other holding – that a common registration statement can confer statutory Section 11 standing on a non-purchaser, see id. at 1164-67 – is also of no benefit to WVIMB because it (1) is contrary to well-settled Second Circuit precedent, see DeMaria v. Andersen, 318 F.3d 170, 176 (2d Cir. 2003), (2) does not apply in the absence of common misrepresentations, see Countrywide, 588 F. Supp. 2d at 1167 (noting "narrow application" of holding), and (3) cannot confer constitutional standing, which is missing here.

before it can proceed to the class certification stage.  Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., 651 F. Supp. 2d 155, 175 (S.D.N.Y. 2009); In re Salomon Smith Barney, 441 F. Supp. 2d at 607 ("[T]he Article III standing determination should precede that of class certification.").[6]

II.  WVIMB Has Not Alleged Any Actionable Misrepresentations or Omissions

    A.  WVIMB Has Abandoned Any Attempt to Plead Its Own Claim Adequately

WVIMB's allegations regarding the five particular loan originators identified in the complaint are irrelevant to WVIMB's claims because none of the disclosures regarding the underwriting and appraisal criteria for those five originators appears in the 2007-11AR prospectus supplement.  (Def. Mem. at 10.)  WVIMB does not even attempt to respond to this argument; it nowhere separates out any allegations in the complaint that actually pertain to the 2007-11AR prospectus supplement.  Instead, WVIMB plows ahead as if this problem does not exist, citing in its memorandum to any and every allegation in the complaint without regard to whether it relates to the trust that issued the certificates that they purchased.  This is a concession that the complaint does not contain any factual matter whatsoever with respect to the 2007-11AR trust.

WVIMB does argue that defendants' focus on whether WVIMB has stated a claim with

---

[6] The approach taken in the cases which WVIMB relies upon – In re Dreyfus Aggressive Growth Mut. Fund Litig., No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *1 (S.D.N.Y. Sept. 20, 2000), and Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 n.8 (3d Cir. 1987) – has been specifically rejected by "more recent countervailing authority." In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig., 434 F. Supp. 2d 233, 236 n.8 (S.D.N.Y. 2006). The other cases that WVIMB cites found constitutional standing in circumstances not present here, see In re Credit Suisse First Boston Corp. Sec. Litig., No. 97 Civ. 4760 (JGK), 1998 U.S. Dist. LEXIS 16560, at *30-31 (S.D.N.Y. Oct. 20, 1998), did not address standing at all, see In re Westinghouse Sec. Litig., 90 F.3d 696, 718 n.22 (3d Cir. 1996), or simply affirm the rule that at least one named plaintiff must have standing, see Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir. 2007).

respect to 2007-11AR is "improper" because, according to WVIMB, it has "standing to assert claims concerning each and every Trust."  (Opp. at 12 n.12, 13 n.14, 15 n.19.)  This argument is entirely circular.  Even if WVIMB has standing with respect to the other trusts, it obviously cannot assert those claims if it is dismissed from the case for failure to state a claim upon which relief can be granted with respect to 2007-11AR.  See Goldberger v. Bear, Stearns & Co., No. 98 Civ. 8677 (JSM), 2000 U.S. Dist. LEXIS 18714, at *3 (S.D.N.Y. Dec. 28, 2000).

### B. The Prospectus Supplement Was Not Misleading Regarding the Underwriting for the Loans In the Trust

Defendants have demonstrated that the 2007-11AR prospectus supplement disclosed exactly what WVIMB claims was omitted regarding the non-traditional underwriting of the loans. (Def. Mem. at 10-15.)  WVIMB now responds by attempting to change its theory about what was not disclosed.  In the complaint, WVIMB purported to allege that the underwriting standards described in the prospectus supplement were misleading because originators at times deviated from those standards.  Defendants demonstrated that the fact of such deviations was clearly disclosed in the prospectus supplement.  (Def. Mem. at 12.)  In its opposition, WVIMB ignores such disclosure and now argues something entirely different – that the loans were "*routinely and systematically* underwritten pursuant to a total lack of *any* guidelines" (Opp. at 14), because, pursuant to an "*undisclosed objective*" (id. at 12), "guidelines were completely ignored, as the only 'guideline' originators relied on was simply:  *more is better*" (id. at 14).  The complaint, however, is the operative document, and it does not contain any allegations of such "systematic disregard."  Therefore, this attempted change in theory cannot save WVIMB's complaint.  See In re Geopharma, Inc. Sec. Litig., 399 F. Supp. 2d 432, 445 n.100 (S.D.N.Y. 2005) (complaint "cannot be amended by the brief in opposition to a motion to dismiss").  In any event, no facts are alleged in support of this allegation in the brief.

6

WVIMB's pivot to a "systematic disregard" theory – a theory patently inconsistent with WVIMB's statements that it is not alleging any fraudulent or reckless conduct (CAC ¶¶ 156, 165, 170) – is a transparent ploy to bring its complaint within the holding of In re Dynex Capital, Inc., Sec. Litig., No. 05 Civ. 1897 (HB), 2009 U.S. Dist. LEXIS 96527 (S.D.N.Y. Oct. 19, 2009). In Dynex, the court held that plaintiffs had adequately alleged that defendants violated Section 10(b) of the Exchange Act by fraudulently failing to disclose that, pursuant to a "top-down directive from Dynex management," they systematically and routinely disregarded their own underwriting standards in order to achieve loan volume, and supported those allegations with detailed factual matter from nine confidential witnesses with direct knowledge of the origination of the loans at issue. See id. at *12-13, 42-44. Here, WVIMB would be no more able to meet the pleading requirements of Rule 8(a) with respect to a "systematic disregard" theory than it is with respect to the "deviation" theory which appears in the complaint (Def. Mem. at 15-17), because it cannot allege "systematic disregard" with respect to 2007-11AR by relying on allegations regarding originators that had nothing to do with that trust (Opp. at 12-13). Moreover, WVIMB would never be able to meet the heightened pleading standard for fraud, as it would have to do if it is serious about changing to a Dynex "systematic disregard" theory. See Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004). Again, no facts whatsoever are set forth in the brief that could support such an allegation.

  C. The Prospectus Supplement Was Not Misleading Regarding Appraisals
    <u>or Loan-To-Value Ratios</u>

WVIMB's arguments regarding appraisals (Opp. at 15-16) suffer from the same defects as its arguments regarding underwriting: (1) what WVIMB alleges was hidden was disclosed (Def. Mem. at 17), (2) WVIMB cannot now argue that what was hidden was "systematic disregard" when that is not alleged in the complaint, and (3) WVIMB cannot support a

7

"systematic disregard" theory – under either Rule 8(a) or Rule 9(b) – with factual matter regarding originators that had nothing to do with 2007-11AR.  Moreover, WVIMB concedes that its "low LTV" allegations are entirely derivative of its appraisal allegations.  (Opp. at 16.)

   D.  The Prospectus Supplement Was Not Misleading With Respect to Ratings

WVIMB's allegations regarding ratings – which WVIMB admits are dependent on its inadequate allegations regarding inaccurate loan information (Opp. at 17) – remain insufficient:

- Disclosure.  WVIMB does not dispute that the offering documents disclosed the subjective nature of the ratings and their limitations.  (Def. Mem. at 18-19.)

- Applicability of SEC Rule 436(g).  This rule provides that ratings "shall not be considered a part of the registration statement."  17 C.F.R. § 230.436(g)(1).  Nothing in the rule suggests that it applies only when the defendant is a rating agency.  Moreover, the rule applies because the certificates, which entitle their owners to specific repayments of interest and principal, are classic debt securities, not equity interests in the issuing trusts.  See Luminent Mortgage Capital, Inc. v. Merrill Lynch & Co., No. 07-5423, 2009 U.S. Dist. LEXIS 74382, at *2 (E.D. Pa. Aug. 20, 2009).

- Accurate Reporting of Ratings.  WVIMB does not dispute that the prospectus supplement accurately conveyed the actual ratings assigned by S&P and Moody's.

- Subjective Opinions.  There is no reason why the Virginia Bankshares rule regarding subjective opinions should not apply to subjective ratings, and, contrary to WVIMB's blunderbuss citation in its memorandum, the complaint nowhere alleges that the 2007-11AR ratings were not genuinely held or without a basis in fact.  Moreover, WVIMB's new position that the ratings were without a basis in fact is dependent on its inadequate allegations regarding inaccurate loan information.  (Opp. at 18.)

- No Duty.  WVIMB does not dispute, and thus concedes, that defendants had no duty to disclose the allegedly omitted information regarding ratings.  (Def. Mem. at 20.)

III. WVIMB Has Not Alleged Any Injury Cognizable Under the Securities Act

WVIMB does not contend that there has been a single late or missed payment on its certificates, or dispute that the certificates derive their value from such payments.  WVIMB nevertheless argues that it has suffered cognizable "damages" because the risk of a late or missed payment might affect the price at which WVIMB could sell the certificates in a secondary

8

market.  WVIMB's illiquidity argument ignores that it was warned by the prospectus supplement that the certificates might be completely illiquid.  (Def. Mem. at 22.)  The argument also fails because it lacks the factual amplification required to state a claim:  WVIMB has not pled a single fact suggesting that the certificates were ever marketable in the secondary market, let alone that their value in the secondary market has actually fallen.

IV.     WVIMB Has Failed to Plead Compliance With the Statute of Limitations

WVIMB does not dispute that, under Section 13, it has the burden of pleading, in non-conclusory fashion, both the time and the circumstances that it discovered the alleged misrepresentations.  See Krome v. Merrill Lynch & Co., 637 F. Supp. 910, 914 (S.D.N.Y. 1986) (citing Cook v. Avien, Inc., 573 F.2d 685, 695 (1st Cir. 1978)).  WVIMB, however, points to nothing in or out of the complaint that suggests when and how it "discovered" that the originators for the loans included in the 2007-11AR trust had engaged in practices that rendered the prospectus supplement misleading.  The reason for this is simple:  if WVIMB alleged how it "discovered" the alleged misrepresentations, the Court would see that WVIMB has not actually discovered any misrepresentations, but is rather simply speculating, without any basis, that the 2007-11AR originators did things that others in the industry may have done.

Instead of specifying when and how it discovered alleged misrepresentations regarding 2007-11AR, WVIMB describes how the public learned about 2007-11AR delinquencies and rating downgrades.  Delinquencies and rating downgrades, however, reflect under-performance of the trust loans, not the existence of misrepresentations.  See de la Fuente v. DCI Telecomms., Inc., 206 F.R.D. 369, 383 (S.D.N.Y. 2002).

WVIMB should not be allowed another chance to plead compliance with Section 13.  Defendants have demonstrated that the circumstances that WVIMB insists gave rise to its "discovery" – the delinquencies and rating downgrades – occurred at the end of 2007 and the

9

beginning of 2008 (Def. Mem. at 24-25), well more than a year before WVIMB filed the first claims relating to 2007-11AR in its May 7, 2009 complaint.[7]

WVIMB assumes that the relevant filing date for its 2007-11AR claims should be December 2, 2008, not May 7, 2009, because its case has been consolidated with a case filed by Mississippi PERS on December 2, 2008, even though the Mississippi PERS complaint did not contain any claims regarding 2007-11AR and therefore did not toll the statute of limitations with respect to such claims. (Opp. at 22 n.28.) WVIMB's assumption that its 2007-11AR claims relate back to the earlier date is wrong. WVIMB's complaint did not "amend" the Mississippi PERS complaint within the meaning of Rule 15; rather, the two cases were merely consolidated. "A complaint that would be time-barred if it were being tried alone cannot be resuscitated by dint of its consolidation with another case." Bamberg v. SG Cowen, 236 F. Supp. 2d 79, 86 (D. Mass. 2002) (citing Morin v. Trupin, 778 F. Supp. 711, 733-34 (S.D.N.Y. 1991)).

WVIMB's discussion of the law of "storm warnings" (Opp. at 23-24) is also misplaced. Defendants are not arguing that WVIMB should have known about the alleged 2007-11AR misrepresentations as a matter of law based on publicly available information. Defendants are arguing, instead, that WVIMB has failed to plead adequately when it discovered the alleged misrepresentations. In any event, WVIMB's knowledge that its investment was under-performing was indisputably available more than a year before it filed its complaint.

---

[7] According to WVIMB's own chart, Moody's downgraded all but three of the 16 classes of 2007-11AR certificates it rated prior to May 2008. (Egler Decl. Ex. B.) Moreover, as WVIMB admits, the delinquencies "began rising to alarming levels" by the end of December 2007 and had "skyrocket[ed] to more than 20%" by the end of March 2008. (Opp. at 24.) WVIMB also does not dispute that the allegedly "omitted" information regarding ratings was also publicly available before May 2008. (Def. Mem. at 25.) WVIMB actually shows that further details regarding rating issues became available in April 2008. (Opp. at 22 n.29.)

**CONCLUSION**

For the reasons set forth above, defendants respectfully request that the Court dismiss the Consolidated Amended Complaint with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

Dated: January 27, 2010
      New York, New York

                                   DAVIS POLK & WARDWELL LLP

                                   By:    s/ James P. Rouhandeh
                                               James P. Rouhandeh
                                               William J. Fenrich
                                               Hayward H. Smith

                                   450 Lexington Avenue
                                   New York, New York 10017
                                   (212) 450-4000

                                   Attorneys for Defendants Morgan Stanley
                                     Capital I Inc., Morgan Stanley Mortgage
                                     Capital Holdings LLC, Morgan Stanley &
                                     Co. Incorporated, Morgan Stanley, David
                                     R. Warren, Anthony B. Tufariello,
                                     William J. Forsell, and Steven S. Stern