UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                     :
In re Morgan Stanley Mortgage Pass-Through                           :
Certificates Litigation                                              :
                                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : MASTER FILE
                                                                     : 09 Civ. 2137 (LTS)(MHD)
                                                                     :
This Document Relates to:                                            :
                                                                     :
    ALL ACTIONS                                                      :
                                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 17, 2010 ORDER AND FOR
<u>LEAVE TO AMEND PURSUANT TO FED. R. CIV. P. 15</u>**


DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

Attorneys for Defendants Morgan Stanley
Capital I Inc., Morgan Stanley Mortgage
Capital Holdings LLC, Morgan Stanley &
Co. Incorporated, Morgan Stanley, David R.
Warren, Anthony B. Tufariello, William J.
Forsell, and Steven S. Stern

## TABLE OF CONTENTS

PAGE

BACKGROUND ..........................................................................................................................2

    A.    Procedural History ..................................................................................................2

    B.    MSM Securitizations and Conduit Loans ...............................................................5

ARGUMENT .................................................................................................................................7

I.    PERS Does Not Have Class Standing Under Goldman .........................................................7

    A.    Goldman Does Not Confer Class Standing on a Purchaser of Certificates Backed by Conduit Loans ......................................................................................7

    B.    Goldman Does Not Confer Class Standing on PERS Because It Is a Purchaser of Certificates Backed Almost Entirely by Conduit Loans ..................11

II.    New Plaintiffs Cannot Rely on Goldman as a Basis for Class Standing Until the Timeliness of Their Claims is Resolved ................................................................................13

CONCLUSION ............................................................................................................................14

## TABLE OF AUTHORITIES

PAGE

**Cases**

American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974) ........................................ 4, 5, 13

Citigroup Inc. v. International Fund Management S.A., No. 12-1903
   (2d Cir. filed May 9, 2012) ................................................................................................ 2, 5, 13

In re IndyMac Mortgage-Backed Securities Litigation, Nos. 11-2998-cv (L),
   11-3036-cv (con) (2d Cir. filed July 21, 2011) ............................................................. 2, 4, 5, 13

In re Morgan Stanley Mortgage Pass-Through Certificates Litig., No. 09 Civ. 2137
   (LTS)(MHD), 2010 U.S. Dist. LEXIS 84146 (S.D.N.Y. Aug. 17, 2010) ................................ 3

In re Morgan Stanley Mortgage Pass-Through Certificates Litig., 810 F. Supp. 2d 650
   (S.D.N.Y. 2011) ........................................................................................................................ 4

In re Morgan Stanley Mortgage Pass-Through Certificates Litig., No. 09 Civ. 2137
   (LTS)(MHD), 2012 U.S. Dist. LEXIS 98669 (S.D.N.Y. July 16, 2012) ................................. 4

NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., No. 11-2762-cv,
   2012 U.S. App. LEXIS 18814 (2d Cir. Sept. 6, 2012) .................................................... passim

**Statutes and Rules**

17 C.F.R. § 229.1110(a) .................................................................................................................. 6, 11

17 C.F.R. § 229.1110(b) .................................................................................................................. 6, 11

The Second Circuit's recent decision in NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., No. 11-2762-cv, 2012 U.S. App. LEXIS 18814 (2d Cir. Sept. 6, 2012) ("Goldman") does not warrant reconsideration of this Court's prior order or leave to amend the operative complaint in this action (for a fourth time). Under Goldman, which related to offerings under the same shelf registration, a plaintiff has class standing to pursue claims based on offerings from which it did not purchase certificates where those offerings raise "the same set of concerns" as the offerings from which it did purchase certificates. In the context of Securities Act claims alleging misstatements about loan origination guidelines, the Goldman court held that such claims implicate the "same set of concerns" when they are based on certificates backed by loans originated by the same third-party bulk originators.

But that is not this case here. Lead plaintiff Public Employees' Retirement System of Mississippi ("PERS"), the only plaintiff named in the initial complaint brought in this action, purchased certificates from only one offering, MSM 2006-14SL, which did not involve any third-party bulk originators that are common to any of the other offerings that plaintiffs now seek to add to the Third Amended Complaint. Instead, the offering from which PERS purchased certificates was backed by loans that were purchased from hundreds of different correspondent lenders through Morgan Stanley's loan conduit program.

Conduit loans and third-party bulk originator loans not only are different as a factual matter, but conduit loans also do not raise the "same set of concerns" as third-party bulk originator loans. The Goldman court recognized this distinction. NECA specifically alleged misrepresentations in connection with Goldman's conduit program, but the Circuit did not rule that a purchaser of a certificate backed by conduit loans has standing to assert claims on behalf of purchasers of other certificates that were backed by conduit loans even though the issue was

1

squarely before the Circuit. Instead, the presence of conduit loans had no bearing on the class standing analysis. It did not confer class standing on NECA in Goldman, and it does not confer class standing on PERS here.

Because PERS does not, and never did, have class standing to assert the claims of purchasers of certificates from other offerings, the timeliness of new plaintiffs' claims remains subject to the pending IndyMac and Citigroup Second Circuit appeals. Accordingly, plaintiffs' motion for reconsideration and for leave to amend must be denied.

## BACKGROUND

### A.   Procedural History

PERS filed its initial complaint in this action on December 2, 2008 in California state court (the "Initial Complaint"). The Initial Complaint asserted Securities Act claims based on mortgage pass-through certificates issued in fourteen Morgan Stanley Mortgage Loan Trust ("MSM") offerings.[1] PERS purchased certificates in only one of the fourteen offerings, MSM 2006-14SL.[2] (Initial Compl. ¶ 14.) Shortly after it was filed, defendants removed PERS' action and the California federal court transferred the case to the Southern District of New York.

On May 7, 2009, West Virginia Investment Management Board ("WVIMB") filed a complaint in the Southern District of New York purporting to assert claims on behalf of purchasers of certificates in 31 MSM offerings—the fourteen MSM offerings identified in the

---

[1] The fourteen trusts were MSM 2006-4SL, MSM 2006-5AR, MSM 2006-5ARW, MSM 2006-6AR, MSM 2006-7, MSM 2006-8AR, MSM 2006-9AR, MSM 2006-10SL, MSM 2006-11, MSM 2006-12XS, MSM 2006-13ARX, MSM 2006-14SL, MSM 2006-15XS, and MSM 2006-16AX.

[2] Relevant excerpts from the MSM 2006-14SL prospectus supplement dated October 24, 2006 are attached as Exhibit 1 to the accompanying October 9, 2012 Declaration of James P. Rouhandeh. References to "Ex. _" are to the exhibits attached to that declaration.

Initial Complaint, as well as seventeen other MSM offerings. On July 17, 2009, this Court consolidated the two actions and appointed WVIMB lead plaintiff, with no objection from PERS. On September 15, 2009, lead plaintiff WVIMB filed the Consolidated Amended Complaint ("CAC"), which asserted claims based on each of the 31 MSM offerings identified in WVIMB's initial complaint. The CAC alleged that WVIMB purchased certificates in only one of the 31 offerings, MSM 2007-11AR (CAC ¶ 9), and made no mention of PERS.

On August 17, 2010, this Court dismissed WVIMB's claims with respect to each of the 31 offerings other than MSM 2007-11AR and MSM 2006-14SL. In re Morgan Stanley Mortgage Pass-Through Certificates Litig., No. 09 Civ. 2137 (LTS)(MHD), 2010 U.S. Dist. LEXIS 84146, at *31-32 (S.D.N.Y. Aug. 17, 2010) ("August 2010 Order").[3] With respect to the single offering in which WVIMB had purchased its certificates, this Court dismissed WVIMB's claims with prejudice as untimely. Id. at *30, *32. Although the Court noted that "PERS is not named specifically in the CAC, and there are no allegations specific to the 2006-14SL trust in the CAC," it granted leave to amend to attempt to show that PERS had standing and to "augment and clarify" PERS' pleading of its claims. Id. at *31-32.

On September 10, 2010, PERS filed the Second Amended Complaint ("SAC"), adding five new plaintiffs bringing claims previously asserted by WVIMB and PERS based on seven

---

[3] Plaintiffs incorrectly claim that the August 2010 Order "dismissed nine of the 14 offerings for lack of standing." (Pls.' Mem. at 1.) As set forth expressly in the Court's August 2010 Order, it granted defendants' motion to dismiss for lack of standing as to all offerings except for MSM 2007-11AR and MSM 2006-14SL. August 2010 Order, 2010 U.S. Dist. LEXIS 84146, at *31-32.

MSM offerings.[4] Defendants moved to dismiss the SAC on timeliness, among other, grounds, and the Court granted in part and denied in part defendants' motion, holding that new plaintiffs' claims were timely under the American Pipe tolling doctrine.[5] In re Morgan Stanley Mortgage Pass-Through Certificates Litig., 810 F. Supp. 2d 650, 668, 670 (S.D.N.Y. 2011) ("September 2011 Order").

On September 30, 2011, PERS and three of the new plaintiffs filed the Third Amended Complaint ("TAC"), asserting claims relating to five MSM offerings. (TAC ¶¶ 14-17.) PERS purchased certificates in one of the offerings, MSM 2006-14SL; new plaintiffs purchased certificates in the other four, all indisputably more than three years before new plaintiffs first asserted their claims on September 10, 2010. (Id. ¶¶ 15-17.) On July 16, 2012, this Court denied defendants' motion to dismiss the TAC. In re Morgan Stanley Mortgage Pass-Through Certificates Litig., No. 09 Civ. 2137 (LTS)(MHD), 2012 U.S. Dist. LEXIS 98669 (S.D.N.Y. July 16, 2012).

On July 27, 2007, defendants moved to stay this action in light of two appeals pending before the Second Circuit, In re IndyMac Mortgage-Backed Securities Litigation, Nos. 11-2998-cv (L), 11-3036-cv (con) (2d Cir., filed July 21, 2011) ("IndyMac") and Citigroup Inc. v.

---

[4] Two of the new plaintiffs, each of which had purchased certificates in one of the seven offerings named in the SAC, later withdrew from the action. (Pls.' Mem. at 5 nn.3-4.)

[5] Specifically with respect to tolling under American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), defendants argued that new plaintiffs' claims were untimely under the three-year statute of repose set forth in Section 13 of the Securities Act of 1933 ("Section 13") because their claims were based on certificates purchased more than three years before those claims were filed, and Section 13's statute of repose was not subject to tolling under American Pipe. Defendants also argued, in the alternative, that new plaintiffs' claims should be dismissed as untimely because American Pipe tolling does not apply where, as here, the original plaintiff, PERS, lacked standing to assert them.

International Fund Management S.A., No. 12-1903 (2d Cir., filed May 9, 2012) ("Citigroup"), which raise the precise American Pipe tolling issues that were the basis for this Court's timeliness holding in its September 2011 Order.  Because, as explained further below, Goldman does not confer class standing upon PERS to pursue claims based on the offerings in which new plaintiffs purchased certificates, the questions on appeal in IndyMac and Citigroup remain dispositive of the timeliness of new plaintiffs' claims.  Defendants' motion to stay this action has not yet been decided, and oral argument on these appeals has been preliminarily calendared for the week of December 3, 2012.

      B.     **MSM Securitizations and Conduit Loans**

As noted, the certificates purchased by PERS were issued in a single MSM offering, MSM 2006-14SL.[6]  (TAC ¶ 14.)  MSM certificates are securities backed by pools of residential mortgage loans.  Defendant MSMC was the "sponsor" of the MSM offerings.[7]  (Id. ¶ 19.)  As sponsor, MSMC purchased loans and then pooled and conveyed those loans to the "depositor" for the offerings, defendant Morgan Stanley Capital I Inc. ("MSC").  (Id.)  MSC then conveyed the loan pool to a trust.  In exchange for the loan pool, the trust transferred certificates to MSC.  MSC then sold the certificates to investors through an underwriter, defendant MS&Co.  (Id. ¶ 22.)

---

[6] MSM 2006-14SL is backed by a pool of approximately 6,132 fixed rate second-lien mortgage loans. (Ex. 1 at i, S-21.)  Second-lien mortgage loans, which are loans that are subordinate to a more senior lien on the underlying property, are a different product with a different risk profile than the first-lien mortgage loans which backed the majority of other MSM offerings plaintiffs seek to add to this action.

[7] MSMC is used to refer collectively to defendants Morgan Stanley Mortgage Capital, Inc. and Morgan Stanley Mortgage Capital Holdings LLC.  (TAC ¶ 19.)

MSMC purchased the loans underlying MSM offerings through two primary channels: (1) a conduit loan purchase program (the "Conduit Program") and (2) bulk acquisitions. (Ex. 1 at S-35.) Under the Conduit Program, MSMC purchased loans on a loan-by-loan basis or in small pools from hundreds of correspondent lenders that participated in the Conduit Program. By contrast, under the bulk acquisition program, MSMC purchased loans in "bulk" pools from third-party originators, including American Home Mortgage Corp., First National Bank of Nevada, and GreenPoint Mortgage Funding, Inc. (See, e.g., Ex. 2 at S-26; Ex. 3 at S-26.)

The prospectus supplement for the 2006-14SL offering from which PERS purchased its certificates disclosed that 90.43% of the loans backing those certificates were purchased by MSMC through the Conduit Program. Although the prospectus supplement provided that MSMC "originated or purchased" 90.43% of the loans backing the 2006-14SL certificates (Ex. 1 at S-22), it is clear from the prospectus supplement itself that MSMC only could have purchased loans in connection with the MSM 2006-14SL offering. The prospectus supplement disclosed that MSMC was an originator of commercial loans, not of residential mortgage loans. (Id. at S-34-S-35.) No third-party bulk originators are disclosed (or were required to be disclosed) in the MSM 2006-14SL offering documents. (See generally id.) This is because third-party originators must be disclosed only when they originate at least 10% of the loans backing a particular offering. See 17 C.F.R. § 229.1110(a). Nor were any third-party underwriting guidelines disclosed, which is required when a third-party originator originates at least 20% of the relevant loans. See 17 C.F.R. § 229.1110(b).

**ARGUMENT**

Neither reconsideration nor leave to amend is warranted here because there has been no "intervening change of controlling law" applicable to this case.  (See Pls.' Mem. at 2.)  As an initial matter, plaintiffs are seeking relief from this Court's August 17, 2010 Order, which addressed a complaint in which <u>none</u> of them was a plaintiff.  But more fundamentally, plaintiffs' primary argument in support of reconsideration and amendment—that "one originator in particular—[MSMC]—contributed large percentages of loans to *all* 14 offerings," and therefore, plaintiffs have standing under <u>Goldman</u> to assert class claims on behalf of certificate-holders in each of those offerings, <u>id.</u>—is simply incorrect, as is apparent from the face of the documents incorporated by reference in the TAC.

**I.      PERS Does Not Have Class Standing Under <u>Goldman</u>**

<u>Goldman</u> does not hold that certificates backed by Conduit Program loans confer class standing upon a plaintiff who purchased such certificates.  Nor does <u>Goldman</u> hold that Conduit Program loans and third-party bulk originator loans raise the "same set of concerns" for purposes of the class standing analysis.  Yet plaintiffs argue that <u>Goldman</u> stands for both of these propositions as the basis for their reconsideration motion.  Plaintiffs are wrong.

**A.      <u>Goldman</u> Does Not Confer Class Standing on a
Purchaser of Certificates Backed by Conduit Loans**

The plaintiff in <u>Goldman</u>, NECA-IBEW Health & Welfare Fund ("NECA"), purported to bring Securities Act claims on behalf of a class of investors in seventeen separate offerings issued by Goldman Sachs.  <u>Goldman</u>, 2012 U.S. App. LEXIS 18814, at *4.  NECA purchased certificates in only two of the seventeen offerings.  <u>Id.</u>  Like the MSM offerings at issue in this action, the offerings at issue in <u>Goldman</u> were backed by pools of residential mortgage loans

7

acquired by the sponsor of the securitizations through two primary channels: "(1) the 'Goldman Sachs Mortgage Conduit Program' . . . and (2) bulk acquisitions in the secondary market." Id. at *5.  The two offerings from which NECA purchased certificates contained loans originated by third-party bulk originators GreenPoint and Wells Fargo, as well as loans acquired through the Goldman Sachs Conduit Program.  Id. at *50.  The remaining fifteen offerings from which NECA did not purchase certificates also contained loans originated by GreenPoint and Wells Fargo, as well as by other third-party bulk originators and loans purchased through the Conduit Program.  Id. at *5-6.

      NECA's claims in Goldman were similar to the claims plaintiffs assert here in that they alleged misrepresentations and omissions in offering documents principally concerning underwriting guidelines, loan-to-value ratios, and appraisals.  NECA based its claims on specific allegations of third-party bulk originator misconduct.  See id. at *12-15.  Unlike plaintiffs here, however, NECA also alleged misrepresentations specifically concerning Goldman's Conduit Program.  See id. at *10-12, 45; see also Second Am. Compl., Goldman, No. 08-cv-10783 (MGC), Dkt. No. 71 at ¶¶ 28-33, 41-42, 58 (S.D.N.Y. Nov. 9, 2009).

      In considering whether NECA had standing to bring claims on behalf of a putative class of purchasers of certificates issued in offerings from which NECA did not purchase, the Second Circuit held that a plaintiff has class standing when (i) the plaintiff personally has suffered some actual injury as a result of the alleged misconduct and (ii) the alleged misconduct implicates the "same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." Goldman, 2012 U.S. App. LEXIS 18814, at *43 (internal citation omitted).  The Circuit noted that, in a misrepresentation case, the alleged

8

misconduct almost always will be the same, namely that a misrepresentation was made, but that whether that alleged misconduct implicates the same set of concerns for the same plaintiffs will depend "on the nature and content of the specific misrepresentation alleged." Id. at *44.

In the case before it, the Circuit observed, the specific alleged misrepresentations concerned misstatements about loan origination guidelines that were predicated, not upon the defendants' departure from their own underwriting guidelines, but, rather, upon the third-party bulk originator's departure from their respective underwriting guidelines. Accordingly, the Circuit concluded:

> In the context of §§ 11 and 12(a)(2) claims alleging misstatements about origination guidelines, we think that differences in the identity of the originators backing the Certificates matters for purposes of assessing whether those claims raise the same set of concerns. That is because, to the extent the representations [about origination guidelines] in the Offering Documents were rendered misleading with respect one Certificate, they were not necessarily misleading with respect to the others. Thus, while the alleged injury suffered by each Offering's Certificate-holder may 'flow from' the same Shelf Registration Statement or from nearly identical misstatements contained in distinct Prospectus Supplements, each of those alleged injuries has the potential to be very different – and could turn on very different proof. That proof would center on whether the particular originators of the loans backing the particular Offering from which a Certificate-holder purchased a security had in fact abandoned its underwriting guidelines, rendering defendants' Offering documents false or misleading.

Id. at * 47-48 (emphasis in original).

Applying its holding to the claims before it in Goldman, the Circuit found that "[NECA] has class standing to assert the claims of purchasers of Certificates from the 5 additional Trusts containing loans originated by GreenPoint, Wells Fargo, or both," id. at *50—the third-party bulk originators that originated loans backing NECA's certificates. The ten offerings for which the Second Circuit found NECA did not have class standing had no third-party bulk originators in common with NECA's certificates. Id. at *50-51.

The Second Circuit did not base its class standing analysis on loans purchased through the Goldman Sachs Conduit Program. NECA made several allegations about alleged misrepresentations concerning the Goldman Conduit Program, yet the Circuit did not base its decision on the existence, identity or presence of either the conduit loans, the correspondent lenders that originated them, or the conduit loan purchaser. For example, the Goldman shelf registration statement "common to every Certificate's registration statement represent[ed] that, for loans purchased under the Conduit Program, 'the originating lender makes a determination about whether the borrower's monthly income . . . will be sufficient to enable the borrower to meets its monthly obligations on the mortgage loan and other expenses related to the property,'" id. at *45; Goldman Second Am. Compl. ¶ 29, but the "originating lenders" behind the conduit loans were not relevant to the Goldman court's class standing analysis. So too is the case here.

The Circuit's exclusion of conduit loans from the class standing analysis is for good reason. In the context of a misrepresentation case, conduit loans raise a different set of concerns than bulk acquisition loans. In Goldman, the Circuit focused on the commonality of third-party bulk originators across certificates because NECA had alleged systematic disregard of underwriting standards by third-party bulk originators supported by specific allegations of misconduct. Thus, in the Second Circuit's view, to the extent a particular originator had, in fact, abandoned its underwriting standards, that conduct potentially would impact, for purposes of a class standing analysis, putative class members who purchased a certificate backed by loans originated by that originator. Goldman, 2012 U.S. App. LEXIS 18814, at *48. The same simply does not hold true for conduit loans. Conduit loans are originated by hundreds of small lenders who provide loans that ultimately comprise relatively small percentages of a particular loan pool

backing a certificate. Therefore, even if a particular correspondent originator systematically abandoned its own underwriting guidelines—which in this case PERS does not even allege—it would be highly unlikely, if not impossible, that such abandonment either could have the potential impact across offerings on which the Goldman court was focused or, more fundamentally, could have a significant enough impact on a loan pool to render an offering document misleading. See id. at *47-48.

### B. Goldman Does Not Confer Class Standing on PERS Because It Is a Purchaser of Certificates Backed Almost Entirely by Conduit Loans

Goldman's inapplicability to certificates backed by conduit loans is fatal to PERS' motion for reconsideration. The 2006-14SL prospectus supplement disclosed that more than 90% of the loans backing PERS' certificates were purchased through the Conduit Program, not originated by third-party bulk originators. (Ex. 1 at S-22.) Although the prospectus supplement provided that MSMC "originated or purchased" 90.43% of the loans backing the 2006-14SL certificates (id. at S-22), it is clear from the prospectus supplement itself that MSMC only could have purchased loans in connection with the MSM 2006-14SL offering. The prospectus supplement disclosed that MSMC was an originator of commercial loans, not of residential mortgage loans. (Id. at S-34-S-35.) No MSMC underwriting guidelines, nor the underwriting guidelines of any other mortgage loan originator, are disclosed in the prospectus supplement, see generally id., which would be required if an originator, including MSMC, had provided at least 20% of the relevant loans. See 17 C.F.R. § 229.1110(b). The identity of any third-party bulk originator is nowhere disclosed in the prospectus supplement, which would be required if that originator had provided at least 10% of the relevant loans. See 17 C.F.R. § 229.1110(a).

Plaintiffs' own allegations underscore MSMC's role as conduit loan purchaser and not mortgage loan originator. Plaintiffs' TAC is devoid of any allegation that MSMC disregarded its own loan origination practices. Plaintiffs' TAC is also devoid of any allegation that the correspondent lenders, who actually originated the loans purchased by MSMC through the Conduit Program, systematically disregarded their underwriting standards, and, in fact, the TAC does not even identify any such lenders or any specific misconduct in which they allegedly engaged.[8] At most, plaintiffs include a few vague references to an unnamed group of "original lenders" or "originators." (TAC ¶¶ 38, 43, 44.) By contrast, plaintiffs' allegations concerning the abandonment of underwriting guidelines are directed exclusively at third-party bulk originators. (See, e.g., TAC ¶ 49 (AHM systematically ignored its underwriting guidelines); id. ¶ 58 (FNBN routinely and systematically violated its underwriting practices); 68 (GreenPoint systematically did not apply its underwriting guidelines); id. ¶ 74 (MSCC's underwriting guidelines systematically disregarded repayment ability to originate as many loans as possible).)

Accordingly, because Goldman does not confer class standing upon a purchaser of certificates backed by conduit loans—such as PERS here—PERS does not have class standing to assert claims based upon offerings from which it did not purchase certificates.

---

[8] For this reason, PERS' claim that it allegedly suffered harm caused by alleged misstatements in the offering documents for MSM 2006-14SL concerning departures from underwriting practices cannot be sustained because it is unsupported by any allegations concerning how the correspondent lenders who actually originated those loans supposedly departed from their respective underwriting practices.

**II.     New Plaintiffs Cannot Rely on <u>Goldman</u> as a Basis for Class
         Standing Until the Timeliness of Their Claims is Resolved**

Plaintiffs claim that, because PERS "has now—and has always had—standing to pursue claims arising from all 14 offerings covered by the initial complaint," the timeliness of new plaintiffs' claims is no longer in question. (Pls.' Mem. at 6 n.6.)  But this assertion is based on the flawed premise that PERS actually has, and has had, standing to pursue claims based on new plaintiffs' certificates.  Because, as explained above, PERS did not, and does not, have standing to pursue claims based on any offering other than MSM 2006-14SL, no party with standing to pursue claims based on new plaintiffs' certificates was involved in this action until new plaintiffs themselves appeared on September 10, 2010—more than three years after they purchased their certificates.  (<u>TAC</u> ¶¶ 15-17.)  Accordingly, whether new plaintiffs' claims are timely still depends on (1) whether <u>American Pipe</u> tolling applies to statutes of repose and (2) whether <u>American Pipe</u> tolling applies to statutes of limitations and repose when the original named plaintiff lacked standing to pursue the claims.  These are the precise questions pending before the Second Circuit in <u>IndyMac</u> and <u>Citigroup</u>, (Defs.' Mem. in Support of Mot. to Stay at 1, 3-4), for which oral argument has been preliminarily calendared for the week of December 3, 2012. Whether new plaintiffs' claims are properly part of this action, therefore, still will not be determined until after those appeals are decided, and new plaintiffs' standing to pursue claims based on any certificates other than their own cannot be decided until after that time.

13

## **CONCLUSION**

For the reasons set forth above, defendants respectfully request that this Court deny plaintiffs' motion for reconsideration of this Court's August 17, 2010 Order and for leave to amend pursuant to Federal Rule of Civil Procedure 15.

Dated: October 9, 2012
       New York, New York

DAVIS POLK & WARDWELL LLP

By: /s/ James P. Rouhandeh
    James P. Rouhandeh
    (rouhandeh@davispolk.com)
    Dana M. Seshens
    (dana.seshens@davispolk.com)
    Carissa M. Pilotti
    (carissa.pilotti@davispolk.com)

450 Lexington Avenue
New York, New York  10017
(212) 450-4000

Attorneys for Defendants Morgan Stanley Capital I Inc., Morgan Stanley Mortgage Capital Holdings LLC, Morgan Stanley & Co. Incorporated, Morgan Stanley, David R. Warren, Anthony B. Tufariello, William J. Forsell, and Steven S. Stern